294 F.3d 365
Georgiann E. ALFANO, Plaintiff-Appellee-Cross-Appellant,v.Joseph J. COSTELLO, Susan A. Connell, Individually and as Deputy Superintendent of Administration at Midstate Correctional Facility, Gordon Wells, Individually and as a Captain at Midstate Correctional Facility, John Doe, Individually and as Employees of the Midstate Correctional Facility, James Raymond, Individually and as an agent of the Inspector General's Office, James Countryman, Individually and as Deputy Superintendent of Security at Midstate Correctional Facility, Kevin Buttimer, Individually and as Recreational Supervisor at Midstate Correctional Facility, Scott Carlsen, Individually and as DeputySuperintendent of Programs at Midstate Correctional Facility, William Fenton, Individually and as a Captain at Midstate Correctional Facility, Thomas A. Coughlin, III, Individually and as Former Commissioner of the New York State Department of Correctional Services, Phillip Coombs, Individually and as Commissioner of the New York State Department of Correctional Services, Dennis Thompson, Individually and as Deputy Superintendent of Security at Midstate Correctional Facility, Glenn S. Goord, Individually and as an agent of New York State Department of Correctional Services, Michael G. Brown, Individually and as a Lieutenant at Midstate Correctional Facility, James Deering, Individually and as a Lieutenant at Midstate Correctional Facility, New York State Office of the Inspector General, State of New York, Midstate Correctional Facility, New York State Department of Civil Service, New York State Department of Audit and Control, Defendants,New York State Department of Correctional Services, Defendant-Appellant-Cross-Appellee.
Docket No. 00-9304(L).
Docket No. 01-7042(XAP).
United States Court of Appeals, Second Circuit.
Argued: November 30, 2001.
Decided: June 25, 2002.

COPYRIGHT MATERIAL OMITTED COPYRIGHT MATERIAL OMITTED Andrea Oser, Assistant Solicitor General, Albany, N.Y. (Eliot Spitzer, Attorney General of the State of New York, Nancy A. Spiegel, Assistant Solicitor General, on the brief), for Defendant-Appellant-Cross-Appellee.
Michael J. Sciotti, Hancock & Estabrook, LLP, Syracuse, NY, for Plaintiff-Appellee-Cross-Appellant.
Before: WALKER, Chief Judge, JACOBS and SACK, Circuit Judges.
JACOBS, Circuit Judge.

1
A jury in the United States District Court for the Northern District of New York (Mordue, J.) awarded $150,000.02 in emotional distress damages on the claim of Georgiann Alfano that during her employment as a corrections officer she experienced a "hostile work environment" amounting to unlawful sex discrimination under 42 U.S.C. § 2000e et seq ("Title VII"). (Alfano's unlawful termination claim was dismissed pre-trial; and her disparate treatment claim was dismissed at the close of evidence.) Her employer, defendant New York State Department of Correctional Services ("DOCS"), timely moved post-verdict for judgment as a matter of law, arguing:

2
• That the jury should not have been permitted to consider, for purposes of assessing the hostile work environment claim, certain incidents of alleged harassment that the district court, in earlier dismissing Alfano's disparate treatment claim, ruled were not motivated by gender-based animus;

3
• That the remaining incidents of harassment, while concededly sex-based, were insufficiently numerous and significant as a matter of law to support a hostile work environment claim; and

4
• That the evidence of emotional distress was too vague and conclusory to support the requisite finding of concrete harm; that it consisted entirely of Alfano's own uncorroborated testimony; and that it failed to link any emotional distress to the workplace conduct of which Alfano had complained.

5
On DOCS's post-trial motion, the district court: [1] decided that the incidents ruled immaterial to the disparate treatment claim were properly submitted for the jury's consideration of the hostile work environment claim; [2] did not reach, therefore, the issue of whether the remaining incidents were alone sufficient to support the finding of a hostile work environment; and [3] ruled that the evidence of emotional distress was sufficient to support the award of damages.

6
DOCS now appeals the final judgment awarding Alfano compensatory damages. Alfano cross-appeals the pre-trial dismissal of her claim that her employment termination constituted unlawful discrimination.

7
We conclude that the evidence at trial was insufficient as a matter of law to establish a hostile work environment under Title VII. Accordingly, we reverse the judgment without reaching the distinct issue of whether Alfano adduced sufficient evidence of emotional distress. And we affirm the dismissal, as time-barred, of the claim that her termination from DOCS constituted unlawful sex discrimination.

Background
A. Employment History

8
DOCS hired Alfano in 1980; this lawsuit concerns her employment from 1988 through mid 1994 as a sergeant at DOCS's Midstate Correctional Facility ("Midstate"), a medium security prison in Marcy, New York, housing approximately 2000 male inmates.

9
Twelve incidents, between December 1989 and February 1994, were laid before the jury in connection with Alfano's claim that her work environment was permeated by hostility based on sex.

10
Four of those incidents had an overtly sexual overtone; that is, a jury could conclude that she was made the object of some embarrassment or humiliation aimed at her as a woman:

11
• In the fall of 1991, Captain William Fenton told Alfano that she should not eat carrots, bananas, hot dogs or ice cream on the job because she did so in a "seductive" manner. Fenton explained that he had been told by Lieutenant Michael Brown about an incident — not witnessed by Brown — in which Alfano allegedly simulated oral sex with a carrot in the Midstate dining area.

12
• In December 1991, Alfano discovered in her workplace mailbox a carrot and two potatoes put there by someone who had the idea of arranging them to suggest male genitalia. Her discovery was made in the presence of ten to fifteen fellow employees. Alfano reported the incident to her watch commander (on that occasion either Lt. Brown or Lt. James Deering). Deering testified that he laughed at the incident.

13
• On February 9, 1992, a spurious notice was posted in the visiting room (and perhaps was handed to Alfano), purporting to be signed by Midstate's Superintendent, stating that "[C]arrots will not be allowed in the visiting area due to Sgt. Alfano's strong liking for them. If they are diced up, it will be okay. Supt."

14
• In February 1994, Alfano found in her mailbox a hand-drawn cartoon depicting an officer under her supervision, Anthony Farda, making vulgar sexual remarks. Alfano had previously been investigated — and cleared — for allegedly inappropriate physical contact with Officer Farda while on duty.

15
The remaining eight incidents cited by Alfano are administrative and personnel decisions as to which she claims she was treated unfairly because she is a woman. It appears that these eight incidents are the ones that the district court ruled could not support the disparate treatment claim:

16
• In December 1989, Lt. Brown caused to be placed in Alfano's personnel file a memorandum detailing Alfano's verbal abuse of Brown, her superior officer. Without challenging the substance of the incident recounted in the memo, Alfano showed that in violation of DOCS policy Brown failed to give Alfano notice that this document was to be placed in her file. Alfano discovered the memo in December 1991, and it was promptly removed at her request.

17
• Brown gave Alfano overall ratings of "good" on her annual performance evaluations in January 1990 and January 1992, even though (as the jury could find) she deserved higher ratings. (These two evaluations are counted as two incidents.) Alfano contested the January 1990 evaluation on the ground that Brown had supervised her for only two months in 1989. DOCS ordered that the evaluation be redone by all three of Alfano's supervisors (including Brown), but Brown apparently redid it by himself in April 1990; the evaluation remained "good," and Alfano evidently did not appeal it (though she submitted a letter indicating disagreement). Alfano appealed the January 1992 evaluation, and her rating was changed to "excellent." (The January 1991 evaluation was not contested: Brown had rated Alfano "excellent.")

18
• In October 1990, a person visiting an inmate made an obscene gesture at Alfano. Alfano reported this to Brown, who issued a warning to the visitor. Alfano had expected that Brown would order the visitor removed forthwith, and contended at trial that allowing the visit to continue undermined her authority.

19
• In December 1990, Alfano apparently left her post for three hours to do paperwork in an employee workroom. DOCS's personnel practice is to deal with minor performance problems orally without a written memorandum in an "informal counseling" conducted by the supervisor, and to deal with more serious or repeated misconduct in a "formal counseling" that results in a memorandum that remains in the personnel file for at least a year. Alfano's off-post preparation of paperwork in the employee workroom drew a formal counseling from Brown. Other officers had committed that offense (though none was absent from post for as long as three hours), and they had been reprimanded for being off-post in that room for that purpose, but according to Alfano, she was the only one who was formally counseled for that offense.

20
• In December 1993, Alfano angrily slapped papers onto Lt. Deering's desk in the presence of other officers, which precipitated an "informal counseling" by Deering. Alfano contended that the informal counseling was improperly done because Deering invited a captain and a union representative to be present, and caused a memorandum of the event to placed in Alfano's personnel file.

21
• In December 1991, Brown investigated Alfano for inappropriate physical contact with a subordinate. In one incident, Alfano exchanged a brief kiss with Officer Farda; in the other, Alfano (having a bandaged finger) asked Farda to help her remove a dollar bill from her front pocket. (The record as to what happened and when is a bit murky.1) Alfano contended at trial that the investigation was unwarranted because the contact was innocuous.

22
• Finally, Alfano contended that Brown made it difficult for her to resolve building maintenance problems: the only incident cited was Alfano's recollection (undated) that she had been required once to fill out a formal request form in order to fix a ventilation problem, whereas she heard that male sergeants were permitted to handle maintenance issues more informally.

23
For reasons that ultimately are not relevant on appeal, Alfano received a notice of discipline in May 1994, was placed on administrative leave in July 1994, was suspended without pay on August 1, 1994, and was later terminated.

B. Procedural History

24
On February 7, 1992, Alfano filed a complaint with the Equal Employment Opportunity Commission ("EEOC") and the New York State Division of Human Rights, charging DOCS and certain individual defendants with sex discrimination and sexual harassment. The EEOC issued a right-to-sue letter in August 1994. Alfano commenced this action on November 23, 1994.

25
The complaint alleged federal and state law claims against DOCS and against DOCS officials in their individual capacities. On October 16, 1996, the district court (Pooler, J.) granted in part the defendants' motion for judgment on the pleadings, dismissing all of the individual defendants from the federal Title VII claims, and dismissing some claims altogether as time-barred by reason of Alfano's failure to exhaust administrative remedies. Alfano v. Costello, 940 F.Supp. 459 (N.D.N.Y.1996). Among the latter was Alfano's claim that her suspension without pay in August 1994 constituted unlawful sex discrimination; that allegation was not in the EEOC complaint and (the court ruled) was not "reasonably related" to any of the allegations that were. Id. at 468-69. Alfano's cross-appeal is limited to the dismissal of this claim.

26
Alfano's Title VII claim alleged sex discrimination under two theories: disparate treatment and hostile work environment. Her trial evidence consisted of the twelve incidents set out above, as well as her testimony that the discrimination she suffered had caused her to suffer emotional distress. Her testimony on emotional distress was of two kinds: in describing each incident, she typically testified that she had been "upset" or "embarrassed," or had wept in frustration or embarrassment; second, she described more generally how her mental state and her life had been affected (e.g., she became a "basket case," she "lost" her husband, her relationship with her son changed, she lost sleep, she gained 52 pounds, she was driven to seek psychiatric care, and she was prescribed an anti-depressant).

27
At the conclusion of Alfano's case-in-chief, DOCS moved pursuant to Fed. R.Civ.P. 50(a) for judgment as a matter of law on both the disparate treatment claim and the hostile work environment claim. The district court reserved decision. At the close of all the evidence, upon renewed motion, the district court granted the motion in part, dismissing the disparate treatment claim. In so doing, the court ruled [1] that the incidents relied upon by Alfano (individually and in the aggregate) did not amount to an "adverse employment action" as required to establish disparate treatment under Title VII, and [2] that even if Alfano could demonstrate an adverse employment action, she had come "nowhere near raising an inference of discriminatory motive as to each incident" because she failed to show that "similarly situated male employees received more favorable treatment in each situation of which she complains."

28
The parties subsequently stipulated to dismiss the state law claims in exchange for extending the relevant time period back to January 1990.2 Thus, the sole claim to reach the jury was Alfano's Title VII hostile work environment claim against DOCS.

29
Over DOCS's objection, the district court allowed the jury to consider all twelve of the incidents cited by Alfano in assessing the hostile work environment claim, including those the court had ruled insufficient as a matter of law to support Alfano's disparate treatment claim.

30
The jury found in favor of Alfano on the hostile work environment claim and awarded $150,000.02 in compensatory damages for emotional distress.

31
DOCS moved post-trial for judgment as a matter of law or (in the alternative) for a new trial, arguing (inter alia) that the evidence was insufficient as to both liability and damages. The motion was denied. DOCS timely appealed. Alfano cross-appeals the earlier order dismissing her claim that the notice of discipline in May 1994 and her August 1994 suspension constituted sex discrimination.

Discussion

32
Alfano pleaded both discrimination theories available under Title VII: disparate treatment (or "quid pro quo" discrimination) and hostile work environment. The district court dismissed the disparate treatment claim at the close of evidence (a ruling not challenged on appeal) on the ground that the eight personnel actions raise no inference that could support a recovery on that theory. On appeal, DOCS challenges the sufficiency of the evidence adduced to demonstrate a hostile work environment, chiefly on the theory that if the eight personnel actions could not support the inference of disparate treatment, they should have been excluded from the jury's consideration of the hostile work environment claim. For the reasons stated below, we conclude that the evidence was insufficient to support an inference that Alfano suffered a hostile work environment; but as a preliminary matter, we reject DOCS's argument that evidence excluded as insufficient to support an inference of disparate treatment must necessarily be excluded from consideration of a hostile work environment claim.

A. Governing Legal Principles

33
A disparate treatment claim requires a showing of an adverse employment action "either because of gender or because a sexual advance was made by a supervisor and rejected." Kotcher v. Rosa & Sullivan Appliance Ctr., Inc., 957 F.2d 59, 62 (2d Cir.1992). An adverse employment action may or may not entail economic loss, but there must be a link between the discrimination and some "tangible job benefits" such as "compensation, terms, conditions or privileges" of employment. Karibian v. Columbia Univ., 14 F.3d 773, 778 (2d Cir.1994).

34
A hostile work environment claim requires a showing [1] that the harassment was "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment," and [2] that a specific basis exists for imputing the objectionable conduct to the employer. Perry v. Ethan Allen, Inc., 115 F.3d 143, 149 (2d Cir.1997) (internal citations and quotation marks omitted). The plaintiff must show that the workplace was so severely permeated with discriminatory intimidation, ridicule, and insult that the terms and conditions of her employment were thereby altered. Leibovitz v. N.Y. City Transit Auth., 252 F.3d 179, 188 (2d Cir.2001) (citing Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 67, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986)); Brennan v. Metro. Opera Ass'n, Inc., 192 F.3d 310, 318 (2d Cir. 1999). This test has objective and subjective elements: the misconduct shown must be "severe or pervasive enough to create an objectively hostile or abusive work environment," and the victim must also subjectively perceive that environment to be abusive. Harris v. Forklift Sys., Inc., 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). As a general rule, incidents must be more than "episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." Perry, 115 F.3d at 149 (citation and internal quotation marks omitted). Isolated acts, unless very serious, do not meet the threshold of severity or pervasiveness. Brennan, 192 F.3d at 318; see also Faragher v. City of Boca Raton, 524 U.S. 775, 788, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998) (noting that "[w]e have made it clear that conduct must be extreme to amount to a change in the terms and conditions of employment"). But it is well settled in this Circuit that even a single act can meet the threshold if, by itself, it can and does work a transformation of the plaintiff's workplace. See, e.g., Howley v. Town of Stratford, 217 F.3d 141, 154 (2d Cir.2000) (vile and sexually explicit verbal abuse of a female firefighter that challenged her competence, was witnessed by a large group that included her subordinates, and created a justified fear that she would be left in peril at fire scenes); Richardson v. N.Y. State Dep't of Corr. Serv., 180 F.3d 426, 437 (2d Cir. 1999) (observing that a single sexual assault may be sufficient to alter the terms and conditions of the victim's employment).

35
In short, a plaintiff alleging a hostile work environment "must demonstrate either that a single incident was extraordinarily severe, or that a series of incidents were `sufficiently continuous and concerted' to have altered the conditions of her working environment." Cruz v. Coach Stores, Inc., 202 F.3d 560, 570 (2d Cir. 2000) (quoting Perry, 115 F.3d at 149). To decide whether the threshold has been reached, courts examine the case-specific circumstances in their totality and evaluate the severity, frequency, and degree of the abuse. Harris, 510 U.S. at 23, 114 S.Ct. 367 (relevant factors include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance"); see also Cruz, 202 F.3d at 570.

36
Finally, it is "axiomatic" that in order to establish a sex-based hostile work environment under Title VII, a plaintiff must demonstrate that the conduct occurred because of her sex. Brown v. Henderson, 257 F.3d 246, 252 (2d Cir. 2001); cf. Richardson, 180 F.3d at 440 (same as to racial discrimination).

B. Admissibility of the Personnel Actions

37
DOCS argues that, because the district court properly ruled that the eight personnel actions could not support the claim for disparate treatment, the court erred in permitting the jury to consider them in deciding whether Alfano suffered a hostile work environment, and that the remaining four incidents (which do have sexual overtones) are too few and far apart to support the verdict.

38
DOCS's argument misstates the district court's rulings, confuses the two kinds of Title VII claims, and depends on the idea that the ruling on disparate impact was sound — which it may have been, though its soundness need not be decided because no appeal was taken from that ruling.3

39
The district court dismissed Alfano's disparate treatment claim on two grounds: first, that Alfano had "pointed to no negative consequences or tangible harm flowing from any of [the] incidents, such as demotion, suspension, loss of wages or other disadvantaging results" (Tr. 2824), so that the incidents could not, individually or in the aggregate, amount to an adverse employment action (Tr. 2824-26); and second, that she failed to prove that a discriminatory motive infected all of those incidents because

40
[w]here discriminatory motive is to be proved by evidence of disparate treatment, the plaintiff must demonstrate that employees who are similarly situated in all material respects received more favorable treatment,

41
and Alfano did not. Tr. 2826.

42
After that ruling, DOCS argued that in deciding the hostile work environment claim, the jury should not be allowed to consider the "nonsexual events." Tr. 2834. The district court rejected that argument, and listed for the jury all twelve incidents on which Alfano was relying. Tr. 2949-50. The jury was instructed that with respect to the requirements for a hostile work environment claim, "[y]ou may consider any unequal treatment of the plaintiff that would not occur but for her gender," and that "it is not enough for plaintiff to prove that she was subjected to harassment. Plaintiff must also demonstrate that the harassing conduct was prompted by gender." Tr. 2953-54.

43
Although we conclude ultimately that Alfano failed to demonstrate a sex-based hostile work environment, we reject (as the district court rejected) the argument that such a claim can be supported only by overtly sexual incidents. There is little question that incidents that are facially sex-neutral may sometimes be used to establish a course of sex-based discrimination — for example, where the same individual is accused of multiple acts of harassment, some overtly sexual and some not. See, e.g., Raniola v. Bratton, 243 F.3d 610, 622-23 (2d Cir.2001); Howley, 217 F.3d at 155-56.

44
DOCS argues, however, that once the district court determined that certain incidents were free of sex-based animus as a matter of law, the jury should not have been allowed to consider them as part of a course of conduct tending to show a hostile work environment. This argument fundamentally misapprehends what the district court did. Under either theory (disparate treatment or hostile work environment), a plaintiff must prove that she was singled out for mistreatment because of her sex. As the district court properly noted, however, the two theories differ in pleading and in proof. The disparate treatment theory requires a finding that similarly situated people of the other sex were treated more favorably. Alfano's failure to make that showing precluded a recovery under a disparate treatment theory. For the purpose of that ruling, the district court had no need to decide whether any or all of the eight personnel actions were free of sex-based animus as a matter of law, and the record reflects no such ruling.4

45
Thus, the district court determined that a jury could reasonably conclude that Alfano had been singled out for mistreatment because of her sex even in incidents as to which there was no showing that men were treated differently. This is a logical possibility that the law acknowledges by creating two separate theories of recovery.

C. Sufficiency of the Evidence

46
We conclude that the twelve incidents cited by Alfano, taken together, are insufficient as a matter of law to meet the threshold of severity or pervasiveness required for a hostile work environment, and that the district court therefore should have granted DOCS's motion for judgment as a matter of law. As noted earlier, this determination can be made only by carefully examining the circumstances in their totality, weighing the nature, severity, and frequency of the conduct.

47
In deciding whether the threshold has been met, we are guided by recent case law on hostile work environment claims in this Circuit and others. Preliminarily, however, a review of the incidents relied upon by Alfano reveals that fewer than half provide any support for her claim.

48
Several must be removed from the equation at the outset because they support no inference of mistreatment. Two are the "good" evaluations (rather than "excellent") given by Lt. Brown in January 1990 and by Lt. Brown and Lt. Deering in January 1992. Although Alfano cites these disappointing ratings as "abuse" that was "nonsexual in nature but was nonetheless directed towards Alfano because of her sex," she has pointed to no resulting disadvantage or adverse effect on her job performance. And there is no way to read these evaluations as part of a pattern of mistreatment, because Brown rated her "excellent" in 1991.

49
Just as insubstantial is Brown's treatment of a prison visitor who made an obscene gesture at Alfano. Alfano claims that Brown should have ejected the visitor forthwith, and that his decision instead to warn the visitor undermined Alfano's authority. But there is nothing in the record to indicate that Brown's warning was intended to undermine Alfano, that it was unreasonably indulgent under the circumstances (especially considering the interests of the inmate), or that it deviated from ordinary practice.

50
Alfano also cites her difficulty (not experienced by male peers) in getting action on her requests for routine maintenance. Alfano recalled one occasion on which she apparently was required to fill out paperwork for maintenance that (she heard) male co-workers could arrange less formally. This is essentially a complaint that Alfano's supervisors made it more difficult for her to do her job, and, if reasonably substantiated, it might be marginally relevant to her hostile work environment claim. But it is unsubstantiated. The requirement that Alfano fill out paperwork was consistent with what she testified was "normal" policy or practice, and her testimony that maintenance requests by male peers were more easily arranged — stated in conclusory terms without corroborating detail — is insufficient to support a finding that DOCS imposed a burden on her because she was a woman.

51
Of the twelve incidents, therefore, four (the two "good" evaluations, the maintenance problems, and Brown's allegedly inadequate punishment of a prison visitor) are of no weight whatsoever. This leaves four facially sex-neutral incidents (the December 1989 memo improperly placed in Alfano's personnel file by Brown; the December 1990 formal counseling by Brown; the late 1991 investigation concerning Alfano and Officer Farda; and the December 1993 informal counseling by Deering), as well as the four incidents with sexual overtones (the three carrot-related incidents in late 1991 and early 1992, and the graphic cartoon in early 1994).

52
Several more of these must be removed from consideration, however, because even though they can support an inference that Alfano was mistreated, they do not support an inference that this was because of her sex. One caveat: in concluding that certain incidents must be excluded from consideration, we do not cast doubt on the rulings that admitted those incidents into evidence. At issue here is DOCS's motion at the close of evidence for judgment as a matter of law under Fed.R.Civ.P. 50. In a hostile work environment case, it may well be a proper exercise of the district court's broad discretion to allow the plaintiff to build her case partly by adducing incidents for which the link to any discriminatory motive may, in the first instance, appear tenuous or nonexistent. The plaintiff must, however, establish at trial that incidents apparently sex-neutral were in fact motivated by bias. Thus, at the close of her case, to the extent that the plaintiff relies on facially neutral incidents to create the quantum of proof necessary to survive a Rule 50 motion for judgment, she must have established a basis from which a reasonable fact-finder could infer that those incidents were infected by discriminatory animus. That is the burden Alfano failed to carry with regard to a number of incidents here.

53
Some of the incidents in this case lend themselves to a distinction, which often is dim, between incidents having an overtly sexual tone (such as demeaning advances and humiliations that depend upon or are sharpened by one's sex), and personnel decisions that lack earmarks of bias (earmarks such as unreasonable actions taken by persons shown to have engaged in incidents having an overtly sexual element, or a peculiar enforcement of personnel rules correlated somehow with the claimed ground of discrimination).

54
Everyone can be characterized by sex, race, ethnicity, or (real or perceived) disability; and many bosses are harsh, unjust, and rude. It is therefore important in hostile work environment cases to exclude from consideration personnel decisions that lack a linkage or correlation to the claimed ground of discrimination. Otherwise, the federal courts will become a court of personnel appeals. See, e.g., Byrnie v. Bd. of Educ., 243 F.3d 93, 103 (2d Cir.2001) ("[The court's] role is to prevent unlawful hiring practices, not to act as a superpersonnel department that second guesses employers' business judgments.") (quoting Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs., 165 F.3d 1321, 1330 (10th Cir.1999) (internal quotation marks omitted)); see also Rojas v. Florida, 285 F.3d 1339, 1342 (11th Cir.2002) (federal courts "are not in the business of adjudging whether employment decisions are prudent or fair. Instead, our sole concern is whether unlawful discriminatory animus motivates a challenged employment decision") (internal quotation marks omitted).

55
Moreover, many personnel decisions can be ascribed to discrimination no matter what the supervisor does. Thus, it is easy to claim animus whether a supervisor resorts to counseling (if this is seen as a form of discipline) or not (if lack of guidance is deemed to set up an employee for harsher discipline). Similarly, it is easy to ascribe animus whether an employer prepares a memo after an event of discipline (if the memo is deemed an escalation in severity) or not (if the failure to prepare a memo is deemed a cover-up). And an employer's investigation of an anonymous or disputed act of discrimination can be deemed to prolong and amplify the victim's humiliation, or the failure to investigate may be deemed a cover-up.

56
Keeping these considerations in mind, we see that the majority of incidents cited by Alfano are sex-neutral on their face. Facially neutral incidents may be included, of course, among the "totality of the circumstances" that courts consider in any hostile work environment claim, so long as a reasonable fact-finder could conclude that they were, in fact, based on sex. But this requires some circumstantial or other basis for inferring that incidents sex-neutral on their face were in fact discriminatory. Compare Howley, 217 F.3d at 155-56 (holding that fact-finder could reasonably infer that facially sex-neutral incidents were sex-based where the perpetrator had previously made sexually derogatory statements), and Williams v. Gen. Motors Corp., 187 F.3d 553, 560-64 (6th Cir.1999) (where plaintiff was ostracized on multiple occasions, the use of sex-specific slurs in some incidents justified the inference that all of the incidents were sex-based, allowing the facially neutral incidents to be considered in hostile work environment analysis), with Bowman v. Shawnee State Univ., 220 F.3d 456, 464 (6th Cir.2000) (objectionable but facially sex-neutral behavior by one person could not be considered in hostile work environment claim where there was no evidence of that person's bias).

57
Most of the incidents cited by Alfano involve Lt. Brown. But there is nothing in the record to indicate that Brown's unfairness (if any) was motivated by Alfano's sex. Notably, all of the incidents involving Brown were facially sex-neutral: the 1989 memorandum placed in Alfano's personnel file; the merely "good" evaluations; the 1990 warning to the prison visitor; the 1990 formal counseling; and the investigation in 1991 concerning Alfano and Officer Farda. Nor are there circumstances from which a fact-finder, reasonably could infer sexual animus on Brown's part. Alfano makes much of Brown's admission at trial that he disliked Alfano personally, but there is no indication that he disliked her because she was a woman — unlike Lt. Deering, for example, who testified that he had believed early in his career that women were unsuited to be corrections officers. Nor does the record show that Brown was involved in the anonymous cartoon incident or the carrot incidents (which consisted of one objectionable conversation with Captain Fenton, one anonymous note posted in the cafeteria, and the anonymous incident with the carrot and potatoes). Fenton did testify that it was Brown who told him that Alfano had been seen (by someone else) allegedly simulating oral sex with a carrot, but without more information about the circumstances under which Brown conveyed the information, this is hardly a basis for holding Brown responsible for any of those incidents.

58
In short, four sex-related incidents, none of which were perpetrated by Brown, do not justify the inference that wholly different, facially sex-neutral incidents involving Brown were part of any campaign to harass Alfano on the basis of her sex.

59
Once the Brown incidents are thus excluded from consideration, Alfano is left with five incidents in a span of more than four years: the three carrot incidents from late 1991 to early 1992, the graphic cartoon in February 1994, and the December 1993 informal counseling by Lt. Deering. We now address whether, as a matter of law, these incidents are sufficient to support a finding of a hostile work environment.

60
There is no fixed number of incidents that a plaintiff must endure in order to establish a hostile work environment; rather, we view the circumstances in their totality, examining the nature, severity, and frequency of the conduct. Harris, 510 U.S. at 23, 114 S.Ct. 367; Cruz, 202 F.3d at 570. Evaluating Alfano's evidence in the light of recent case law, we are convinced that it falls well below the threshold. In this Circuit and others, hostile work environment claims have been dismissed for insufficiency of evidence even though, compared to what was adduced here, they involved [1] a similar or greater number of incidents, [2] that were more compressed in time, and [3] that were more severe and had more pronounced discriminatory overtones. In each of the following cases, the evidence was held insufficient as a matter of law to alter the terms and conditions of employment: Quinn v. Green Tree Credit Corp., 159 F.3d 759, 768 (2d Cir.1998) (an appreciative comment about plaintiff's buttocks and a deliberate touching of her breasts); Celestine v. Petroleos de Venezuella SA, 266 F.3d 343, 354 (5th Cir.2001) (in a twenty-five-month period, eight incidents of alleged racial harassment); Shepherd v. Comptroller of Pub. Accounts, 168 F.3d 871, 872-75 (5th Cir.1999) (in a two-year period, co-worker made impertinent and intimate observations about plaintiff's anatomy, attempted to look down her shirt, and touched her multiple times); Black v. Zaring Homes, Inc., 104 F.3d 822, 823-24 (6th Cir.1997) (in a four-month period, repeated sexual jokes, and at least five other sexually offensive remarks); Baskerville v. Culligan Int'l Co., 50 F.3d 428, 430-31 (7th Cir.1995) (in a seven-month period, nine sexually offensive incidents, including repeated references to plaintiff as a "pretty girl," grunting noises when she wore leather skirt, and one episode of simulated masturbation); Hocevar v. Purdue Frederick Co., 223 F.3d 721, 735-36, 738 (8th Cir.2000) (in a three-year period, several sexually derogatory remarks about women by one or more men, a sexual advance at a company dance, disruption of plaintiff's presentation by talking followed by comment on her legs, and a lascivious remark in a group setting by a company official predicting his sexual conquest of three female employees); Sprague v. Thorn Americas, Inc., 129 F.3d 1355, 1365-66 (10th Cir.1997) (in a sixteen-month period, five sexually offensive statements, including one made while harasser had his arm around the plaintiff and was peering down her dress); Penry v. Fed. Home Loan Bank of Topeka, 155 F.3d 1257, 1261-63 (10th Cir.1998) (in a three-year period, harasser made remarks concerning plaintiff's bra strap, her underclothing, and whether she had sexual dreams; claimed sexual conquest of another woman employee; made pornographic architectural analogies; and took the plaintiff to a Hooter's restaurant on business travel (six total incidents)); Mendoza v. Borden, Inc., 195 F.3d 1238, 1248-49 (11th Cir.1999) (in an eleven-month period, harasser once made inappropriate physical contact, made one arguably offensive statement, and several times made disgusting noises while staring impertinently), cert. denied, 529 U.S. 1068, 120 S.Ct. 1674, 146 L.Ed.2d 483 (2000); see also Hopkins v. Baltimore Gas & Elec. Co., 77 F.3d 745, 753-54 (4th Cir.1996); Adusumilli v. City of Chicago, 164 F.3d 353, 361-62 (7th Cir. 1998).

61
Conversely, recent cases on hostile work environment in this Circuit have found triable issues of fact only where the harassment was of greater frequency and severity than anything Alfano has demonstrated. Thus, in Raniola v. Bratton, 243 F.3d 610, 621 (2d Cir.2001), we saw a triable issue where the plaintiff demonstrated that, in "two and a half years time," she was subjected to "offensive sex-based remarks, disproportionately burdensome work assignments, workplace sabotage, and one serious public threat of physical harm." In Schwapp v. Town of Avon, 118 F.3d 106 (2d Cir.1997), we held that the plaintiff had created a triable issue of fact based on ten to twelve instances of explicitly racist conduct in twenty months, where most of the incidents involved racial jokes and epithets that insulted blacks, Puerto Ricans, and people of Middle Eastern origin. Id. at 112. In Cruz, we found a triable issue as to whether a workplace was both racially and sexually hostile where the plaintiff demonstrated that a supervisor "subjected her and others to blatant racial epithets on a regular if not constant basis," 202 F.3d at 571, made "repeated remarks" to the effect that women should not work, id., and physically harassed the plaintiff and other women by standing very close when he spoke to them, sometimes backing them into a wall and looking them "up and down in a way that's very uncomfortable," id. at 571-72 (noting that the racial harassment could have "exacerbated the effect of [the] sexually threatening behavior and vice versa"). See also Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 70, 75-76 (2d Cir.2001) (finding a triable issue where harasser touched plaintiff in unwelcome manner on a "daily basis," made "obscene leers at her," "tried to peer down her blouse and up her skirt," and made "approximately ten or twenty" insinuating remarks about her sex life).

62
Taking these cases together as a rough template, we think the conduct in this case falls far short of an actionable claim. In all, the incidents were infrequent and episodic; half or more of them lacked any sexual overtone; and those that did have a sexual overtone were difficult for an employer to remedy because they were largely anonymous. Moreover, as we noted previously, seven of the twelve incidents must be excluded from consideration altogether because they either support no inference of mistreatment at all or support no inference of sex-based hostility. As for the remaining five, the three carrot incidents, which are close in time and amount to three iterations of the same prank, can be considered as a single episode. A reasonable person could have found the carrot and cartoon incidents humiliating, and they were plainly offensive. But they were too few, too separate in time, and too mild, under the standard so far delineated by the case law, to create an abusive working environment. We need not decide whether the Deering counseling was sexually motivated or not, because even if it was, it alone would not add enough to the totality of the circumstances to create a hostile work environment. No reasonable fact-finder could say that as a result of these five incidents over a four-year period, Alfano's workplace was "permeated with discriminatory intimidation, ridicule, and insult." Brennan, 192 F.3d at 318 (quoting Harris, 510 U.S. at 21, 114 S.Ct. 367) (quotation marks omitted).

63
It should also be emphasized that there is no incident here of such severity and character as to itself subvert the plaintiff's ability to function in the workplace, such as the circumstance presented in Howley v. Town of Stratford, 217 F.3d 141 (2d Cir.2000). There, a woman firefighter was subjected to a sexually explicit and degrading barrage of insult, id. at 148, delivered in front of her subordinates by a firefighter who later resisted orders from Howley and spread rumors questioning her competence, id. at 154-55. We concluded that a rational juror could view such a tirade as humiliating and resulting in an intolerable alteration of Howley's working conditions: In an occupation whose success ... often depends on firefighters' unquestioning execution of line-of-command orders in emergency situations, the fomenting of gender-based skepticism as to the competence of a commanding officer [could impair Howley's] ability to lead in the life-threatening circumstances often faced by firefighters.

64
Id. at 154.

65
Corrections officers also work in an environment that can pose physical dangers and requires trust and confidence among co-workers. But Alfano has not pointed to any conduct that endangered her or her authority in a way that would drive her from a perilous employment. She was simply embarrassed on a handful of occasions over a period of four years by the boorish behavior of one or more unidentified co-workers and by one fellow officer who made a dumb joke.

66
In sum, Alfano did not present evidence sufficient to support a jury finding that she experienced a hostile work environment during her employment at Midstate. The district court erred in allowing this evidence to reach the jury and in denying DOCS's post-verdict motion for judgment as a matter of law. Accordingly, we reverse the judgment and remand for proceedings consistent with this opinion.

67
Because our reversal will automatically vacate the damages award, we need not consider DOCS's separate challenge to Alfano's evidence of emotional distress.

D. Alfano's Termination Claim

68
At an early stage of the case, DOCS moved for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c). The district court granted the motion in part. Alfano v. Costello, 940 F.Supp. 459 (N.D.N.Y.1996). Alfano cross-appeals that ruling insofar as it dismissed her claims that an allegedly unwarranted investigation and notice of discipline in May 1994 and her suspension from DOCS in August 1994 constituted unlawful sex discrimination. We refer to these allegations jointly as the "termination claim."

69
As the district court noted, jurisdiction exists over Title VII claims only if they have been included in an EEOC charge "or are based on conduct subsequent to the EEOC charge which is `reasonably related' to that alleged in the EEOC charge." Alfano, 940 F.Supp. at 467 (internal quotation marks omitted). Alfano's EEOC charge, dated January 31, 1992, did not include a termination claim. (She was then still employed at Midstate.) So the question is whether the termination claim was reasonably related to the conduct alleged in Alfano's EEOC charge.

70
Subsequent conduct is reasonably related to conduct in an EEOC charge if: [1] the claim would fall within the reasonably expected scope of an EEOC investigation of the charges of discrimination; [2] it alleges retaliation for filing the EEOC charge; or [3] the plaintiff "alleges further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge." Butts v. City of N.Y. Dep't of Hous. Preservation and Dev., 990 F.2d 1397, 1402-03 (2d Cir.1993).

71
The district court ruled that Alfano's termination claim was not "reasonably related" to the EEOC charge under any of the three tests.

72
As to the first test, the court reasoned that the EEOC would not reasonably have been alerted to the alleged 1994 conduct because Alfano's EEOC charge made no allegation regarding unfounded disciplinary action. Alfano, 940 F.Supp. at 468-69. On appeal, Alfano argues that her termination claim "would have fallen within the scope of the EEOC investigation given that Alfano was essentially complaining of how the rules and regulations of DOCS were being applied to her. It is reasonable to believe that the EEOC would have inquired into other counselings and disciplinary action taken against Alfano." Here Alfano rests, as she did in the district court, on the erroneous premise that her EEOC complaint actually alleged instances of unfounded disciplinary action. But it did not: under DOCS's policy, the counselings by Brown and Deering were not considered disciplinary action. Moreover, because the 1994 notice of discipline was issued by someone not named in the EEOC complaint, in connection with matters unrelated to anything alleged in that complaint, there is even less reason to think that the EEOC would have discovered this disciplinary action in the course of its investigation into Alfano's charges.

73
As to the second test, the district court considered that while Alfano's federal complaint generally alleged "retaliatory conduct" on the part of DOCS, the pleading alleged no link between that conduct and the filing of her EEOC charge. Id. at 469. On appeal, Alfano argues that her complaint "can be interpreted [to say] that the notices of discipline were in retaliation for her having filed an EEOC charge against DOCS." However, Alfano did not allege that DOCS retaliated against her for filing an EEOC charge; her vague, conclusory accusations of "retaliatory conduct" are insufficient to meet the Butts requirement of a specific linkage between filing an EEOC charge and an act of retaliation.

74
Finally, the district court rejected Alfano's argument under the third test, ruling that her termination claim "concern[s] a method of discrimination with respect to defendants' investigation and discipline of plaintiff. None of the claims in Alfano's EEOC charge, however, concern this same discriminatory method or even allude to official investigations or discipline of plaintiff." Id. at 469. On appeal, Alfano argues that the termination claim, "in sum and substance, alleges that DOCS systematically used its rules and regulations against Alfano improperly. This claim was clearly alleged in Alfano's EEOC charge where it references the counseling memo issued by Brown on December 23, 1990." Alfano gives too broad a meaning to the term "reasonably related," and ignores the requirement that the later discrimination be carried out in "precisely" the same manner alleged in the EEOC complaint. A generalized allegation that rules and regulations are applied improperly is not enough to alert the EEOC to a subsequent termination; if it were, the exhaustion requirement would be eviscerated.

75
The district court properly concluded that the subsequent conduct was not reasonably related to the EEOC charge on any of the three bases listed in Butts. We affirm the dismissal of the termination claim as time-barred, largely for the reasons stated in the district court's opinion. Alfano, 940 F.Supp. at 468-69.

Conclusion

76
For the reasons set forth herein, the judgment of the district court is reversed, the order dismissing Alfano's termination claim is affirmed, and we remand for entry of judgment dismissing the complaint.

Notes:

1
The 1991 date is drawn from Alfano's complaint filed with the Equal Employment Opportunity Commission ("EEOC") and the New York State Division of Human Rights on February 7, 1992. That complaint alludes only to the kiss incident; but at trial Alfano also testified about the incident involving the dollar bill. It is not clear when the latter occurred or if it was ever investigated (Alfano's testimony appears to establish only that a "rumor circulated" about the episode). DOCS objected to Alfano's testimony on this matter, and the district court reserved a ruling. Apparently no specific ruling was made, but the jury instructions referred to both incidents. For purposes of analysis, we will assume that the investigation concerning Alfano's contact with Officer Farda encompassed both incidents

2
While the relevant time period began in January 1990, the jury was permitted to consider Lt. Brown's December 1989 act of placing a memorandum in Alfano's personnel file without providing the required notice to her, because Alfano did not discover the memo until December 1991

3
DOCS prevails nevertheless, but on the conceptually simpler ground that the twelve incidents, taken separately or together, cannot support a reasonable inference of sex discrimination that altered the terms and conditions of Alfano's employment. See Part C.,infra.

4
According to DOCS, the district court ruled that Alfano failed to demonstrate an inference of sex-based motivation as toany of the eight facially neutral incidents. In fact, the court's ruling was somewhat more ambiguous: that Alfano "comes nowhere near raising an inference of discriminatory motive as to each incident." Tr. 2826. There is an ambiguity as to whether "each" means "each separate" or "each and every." In any event, the district court had no reason to draw the distinction and that ruling is not challenged on appeal.