**Letitia CHARLES, Plaintiff,**

v.

**State of CONNECTICUT, JUDICIAL BRANCH, COURT SUPPORT SERVICES DIVISION, Defendant.**

**No. 3:06CV01923(DJS).**

United States District Court, D. Connecticut.

June 2, 2008.

Marc L. Glenn, W. Martyn Philpot, Jr., Law Offices of W. Martyn Philpot, Jr., LLC, New Haven, CT, for Plaintiff.

Margaret Q. Chapple, Tammy D. Geathers, Attorney General's Office, Hartford, CT, for Defendant.

## MEMORANDUM OF DECISION AND ORDER

DOMINIC J. SQUATRITO, District Judge.

This is an action for damages in which the plaintiff, Letitia Charles ("Charles"), alleges that the defendant, State of Connecticut Judicial Branch, Court Support Services Division ("CSSD"), discriminated against her and subjected her to a hostile work environment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII").[1] Specifically, Charles claims that CSSD denied her request for a transfer because of her race. CSSD has filed a motion for summary judgment (dkt. # 29) pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons that hereafter follow, the motion for summary judgment (dkt. # 29) is **GRANTED.**

## I.  FACTS

Examination of the complaint, pleadings, Local Rule 56 statements, and the exhibits accompanying the motion for summary judgment, and the responses thereto, discloses the following, undisputed, material facts:

Charles, an African American woman, began her employment with the Judicial Branch in 1987. Charles was initially hired under the title of Probation Officer I. Prior to 1999, Charles' responsibilities included meeting with clients, doing initial intakes and assessments, reviewing court forms, and conducting pre-sentence investigations. In 1999, the Judicial Branch was reorganized and CSSD was formed.

---

1. In her complaint, Charles also brought a claim for intentional infliction of emotional distress. The court dismissed that claim absent objection. (*See* dkt. # 24.)

As a result of the reorganization, Charles primarily performed adult supervisory functions. Charles eventually became a Probation Officer II through the normal progression of employment at CSSD.

In March of 2001, Charles filed a grievance following the denial of her request to be transferred from the New Haven office to the Milford office. Charles subsequently reached an agreement with CSSD, which allowed her to be transferred to the Milford office, and she withdrew the grievance. Currently, Charles is a Probation Officer II assigned to the Milford office in a supervisory capacity. Charles has a clear service record, and CSSD has never denied her an increase in her annual salary when she was eligible for one.

During the time leading up to this suit, CSSD had a voluntary transfer system where employees who were interested in transferring would place their names on a list and indicate where they would like to be transferred. At any point, employees could add or delete their name from the list. Joel Riley ("Riley"), a human resources manager with CSSD, was in charge of monitoring the list. Riley has described the transfer system in place prior to 2004 as unwieldy. As a result, CSSD discontinued the list and created a new system in 2004.

On May 15, 2003, Charles submitted a request to be transferred from the Milford office, where she performed supervisory functions, to the New Haven office where she would perform intake functions. John Brooks, director of administration, sent an acknowledgment to Charles upon receipt of her request. Charles testified in her deposition that though her responsibilities would change after the transfer, there would be no change in her pay or benefits.

Riley testified that the decision to transfer was based on the needs of the particular office in question and the regional managers would make the ultimate decision. The management staff would review the list of employees that desired to be transferred to that particular location and then would select the individual who had the skill set that best fit the office's needs. Riley also testified that if there was a situation where two individuals had identical skill sets, the "tie-breaker" would be the level of seniority. Riley specifically stated that the length of time an employee has been on the transfer list plays no role in the determination of who is transferred.

When Riley took his position as human resources manager with CSSD, he contacted all individuals on the transfer list to ascertain if they still wished to be transferred to the location indicated. Riley contacted Charles in August of 2003, and Charles verified that she still desired a transfer to the New Haven office. On June 14, 2004, Charles sent an email to Riley, asking him for an update on her pending request for transfer. Riley replied that Charles was one of ten applicants for transfer to New Haven and that the final decision was up to the regional managers. Subsequently, in June 2004, Charles learned that a vacant position at the New Haven office had been filled through the voluntary transfer of Kim Anderson ("Anderson"), a Caucasian woman. The reason given for selection of Anderson over Charles was that the New Haven office was looking for an individual with the skill set of doing pre-sentence investigations and Anderson best fit that requirement.

On October 4, 2004, Charles filed a grievance regarding her requested transfer. The union for CSSD filed the grievance on Charles' behalf, alleging a violation of Article 26 of the collective bargaining agreement. According to the response from the grievance hearing officer, the union alleges a violation because Charles'

transfer was pending longer than Anderson's. The hearing officer subsequently found that there was no violation of the collective bargaining agreement because the length of time a request is pending is irrelevant to the decision of who will be transferred.

The complaint alleges that CSSD has subjected Charles to disparate and discriminatory treatment as evidenced by similarly-situated Caucasian employees[2] being transferred to other facilities while Charles, who was the more senior employee, did not receive her requested transfer. The complaint further alleges that the favorable treatment that CSSD has granted to Caucasian employees has created a hostile working environment for Charles.

## II. DISCUSSION

Charles alleges that CSSD discriminated against her and subjected her to a hostile work environment in violation of Title VII. CSSD, for its part, argues that Charles' claims fail as a matter of law and that summary judgment should be granted in its favor. The court shall discuss the parties' arguments seriatim.

## A. SUMMARY JUDGMENT STANDARD

A motion for summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

Summary judgment is appropriate if, after discovery, the nonmoving party "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "The burden is on the moving party 'to demonstrate the absence of any material factual issue genuinely in dispute.'" *Am. Int'l Group, Inc. v. London Am. Int'l Corp.,* 664 F.2d 348, 351 (2d Cir.1981) (quoting *Heyman v. Commerce & Indus. Ins. Co.,* 524 F.2d 1317, 1319–20 (2d Cir. 1975)).

A dispute concerning a material fact is genuine "'if evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Aldrich v. Randolph Cent. Sch. Dist.,* 963 F.2d 520, 523 (2d Cir.1992) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). The Court must view all inferences and ambiguities in a light most favorable to the nonmoving party. *See Bryant v. Maffucci,* 923 F.2d 979, 982 (2d Cir.1991). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Id.*

## B. TITLE VII DISCRIMINATION

Title VII directs that it is "unlawful for an employer ... to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of the individual's race, color, religion, sex or national origin." 42 U.S.C. § 2000e–2(a)(1). In *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), the Supreme Court established the now-familiar burden-shifting framework for analyzing Title VII employment discrimination claims:

---

**2.** Although the complaint speaks of more than one Caucasian CSSD employee, Charles, in her memorandum of law, compares herself only to Anderson. Therefore, the court shall treat only Anderson as the employee to whom Charles compares herself.

The complainant ... must carry the initial burden under the statute of establishing a prima facie case of racial discrimination.... The burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason for the [adverse employment action].... [The plaintiff must then] be afforded a fair opportunity to show that [defendant's] stated reason for [the adverse employment action] was in fact pretext.

*Id.* at 802–04, 93 S.Ct. 1817.

■ A *prima facie* case for Title VII discrimination may be established by showing the following: "1) [the plaintiff] is a member of a protected class; 2) [the plaintiff] applied and was qualified for a job for which the employer was seeking applicants; 3) [the plaintiff] suffered an adverse employment action; and 4) the circumstances surrounding that action permit an inference of discrimination." *Williams v. R.H. Donnelley, Corp.,* 368 F.3d 123, 128 (2d Cir.2004). As the Supreme Court has noted, "[t]he burden of establishing a prima facie case [of employment discrimination] is not onerous." *Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

There is no dispute that Charles has satisfied the first two prongs of the *prima facie* case. CSSD argues, however, that Charles cannot establish a *prima facie* case of racial discrimination because she was not subjected to an adverse employment action. Specifically, CSSD further argues that the decision not to transfer Charles from the Milford office to the New Haven office did not constitute an adverse employment action under Title VII. Charles counters that the denial of such a transfer does constitute an adverse employment action because it hinders her "career progression."

■ The court agrees with CSSD. In the Second Circuit, employment actions that have been deemed adverse employment actions for the purposes of Title VII discrimination claims include "a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguishable title, a material loss of benefits, significantly diminished material responsibilities, or other indices ... unique to a particular situation." *R.H. Donnelley, Corp.,* 368 F.3d at 128 (quoting *Galabya v. New York City Bd. of Educ.,* 202 F.3d 636, 640 (2d Cir.2000)). In order to be considered adverse, "a change in working conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities." *Id.*

■■ This case involves the denial of a transfer. As the Second Circuit has noted, " '[i]f a transfer is truly lateral and involves no significant changes in an employee's conditions of employment, the fact that the employee views the transfer either positively or negatively does not of itself render the denial or receipt of the transfer [an] adverse employment action.' " *Id.* (quoting *Sanchez v. Denver Pub. Sch.,* 164 F.3d 527, 532–33 n. 6 (10th Cir.1998)). Nevertheless, "[a] lateral transfer that does not result in a reduction in pay or benefits may be an adverse employment action so long as the transfer alters the terms and conditions of the plaintiff's employment in a materially negative way." *Patrolmen's Benevolent Ass'n of the City of New York v. City of New York,* 310 F.3d 43, 51 (2d Cir.2002) (citing *de la Cruz v. New York City Human Res. Admin. Dep't of Soc. Servs.,* 82 F.3d 16, 21 (2d Cir.1996) (transfer to "less prestigious" unit of social services department with reduced opportunities for professional growth was an adverse employment action); *Rodriguez v. Board of Educ.,* 620 F.2d 362, 366 (2d Cir.1980) (transfer of experienced middle

school art teacher to elementary school constituted adverse action)). "If an employee 'earns the same salary, has the same benefits, works the same hours ... and has the same opportunities for promotion' following a transfer then there is no adverse employment action ...." *Pimentel v. City of New York*, No. 00 CIV. 326(SAS), 2002 WL 977535, at *3 (S.D.N.Y. May 14, 2002) (quoting *Garber v. New York City Police Dept.*, No. 95 Civ. 2516, 1997 WL 525396, at *4 (S.D.N.Y. Aug. 22, 1997)).

Charles argues that the denial of her transfer request created a materially significant disadvantage because, by preventing her from diversifying her experience, it limited her opportunity for promotion. She believed that having experience in both intake and supervisory positions would increase her chances of attaining a non-union management position. In support of this belief, Charles points to the deposition of CSSD's deputy director, Gregory Halzack ("Halzack"), who testified that "[a]s you move up beyond a supervisor if you are going to be a regional manager or something like that then I think as much experience you have in both worlds [supervisory and intake] helps." (Dkt. # 30, Ex. C, Halzack Dep. at 33: 6–9, hereinafter, "Halzack Dep.")

Even considering Halzack's testimony and Charles' beliefs, the court cannot agree that the denial of the transfer led to a "materially significant disadvantage." *Galabya*, 202 F.3d at 641. "A transfer is an adverse employment action if it results in a change in responsibilities so significant as to constitute a setback to the plaintiff's career." *Id.* at 641. Charles admits that, during her employment with CSSD, her pay was never adversely affected; she was never demoted, disciplined, suspended or terminated; and her job title was never adversely changed. Indeed, Charles admits that not being transferred to the New Haven office did not adversely affect her, and that she has not experienced any sort of adverse employment action as a result of her not obtaining the transfer.

With regard to her chances for promotion, Charles has not put forward any evidence suggesting she is somehow ineligible for promotion as a result of the transfer denial. There is no evidence that the lack of a transfer kept Charles in a "less prestigious" position. In fact, there is no evidence that "supervision" duties were any more or less prestigious than "intake" duties.

Additionally, there is no evidence that a CSSD employee could not, or would not, be promoted because she had experience in only one field within CSSD. Halzack's testimony does not contradict this; indeed, when asked if being an "intake person" or a "supervisor person" puts an employee in a better position to pursue promotional opportunities, he responded "Not necessarily." (*See* Halzack Dep. at 33.) From what the court can discern, Halzack's testimony simply indicates that an employee's experience in "intake" might make that employee more suitable for a promotion within that field, and an employee's experience in "supervision" might make that employee more suitable for a promotion within that field. He did not testify, however, that experience in any particular field was a *sine qua non* for promotion. As a result, the denial of the transfer did not constitute a setback to the Charles' career.[3]

Furthermore, in her own narration of the facts, Charles states that, as a Proba-

---

**3.** Again, the court points out that Charles has admitted that not being transferred to the New Haven office did not adversely affect her, and that she has not experienced any sort of adverse employment action as a result of her not obtaining the transfer.

tion Officer I, she performed intake duties until 1999, when CSSD was formed and she apparently undertook supervision duties. That is to say, it appears that, when she asked for the transfer to New Haven (presumably to perform intake duties), Charles already had intake experience. The court fails to see how Charles would have diversified her experience by transferring to a location where she would be performing duties with which she already was familiar. Quite simply, Charles has not established that the lack of a transfer in any way constituted a setback for her career. Therefore, because she has not shown an adverse employment action, Charles cannot establish a *prima facie* case of race discrimination under Title VII.

■ The court further points out that, even assuming for the sake of argument that Charles had established a *prima facie* case, CSSD has presented a legitimate, nondiscriminatory reason for transferring Anderson instead of Charles, and Charles has not demonstrated that CSSD's reason is pretextual. Specifically, CSSD argues that the choice to transfer Anderson over Charles was based purely on their respective skill sets. According the CSSD, Anderson was the best choice for the transfer because she had the experience in pre-sentence investigations that was needed in the New Haven office.

Charles responds that CSSD's proffered nondiscriminatory, legitimate reason is pretextual because Charles had an "abundance" of experience needed to capably perform the intake duties in New Haven.

Specifically, Charles argues that she had been performing both supervisory and intake functions from 1987 to 1999,[4] and, therefore, she was as equally qualified as Anderson. Furthermore, Charles contends that because she and Anderson were equally qualified, Charles' seniority should have been the "tie-breaker" that would have led to her transfer.

In *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000), the Supreme Court stated: "In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation [for termination] that the employer is dissembling to cover up a discriminatory purpose." However, "there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational fact-finder could conclude that the action was discriminatory." *Id.* at 148, 120 S.Ct. 2097.

According to Charles, she possessed the exact skill set that the New Haven office was purportedly searching for, and the deciding factor for the transfer should have been the level of seniority between Charles and Anderson. The submissions to the court indicate that when two CSSD employees request the same transfer, the employee with the most seniority will receive the transfer *when all other factors are equal.* That is to say, if the skill sets and experiences of the employees are essentially the same, the employee with seniority will win.

---

4. Again, the court points out that this admission cuts against Charles' *prima facie* case. Charles claims the denial of a transfer was an adverse employment action because she needed to diversify her work experience (i.e., work in "intake") in order to help her chances of promotion. Charles admits, though, that she had an "abundance" of this experience before she requested the transfer. Thus, by Charles' own admission, her work experience was diverse. Therefore, her chances of promotion would not suffer on account of not being transferred; a transfer would have provided her only with work experience she already had.

It appears that Charles has greater seniority than Anderson. This is not dispositive, however, because CSSD maintains that Anderson had better qualifications for the specific work in New Haven. Charles claims that she had "comparable experience" to Anderson. Charles' belief in this regard is, however, irrelevant. Instead, she must present evidence to support this claim, and she has not done so.

Charles also claims that she had sufficient experience to perform the work in New Haven. The court does not doubt that Charles had such experience, or that Charles is a good worker and a valuable member of CSSD. Nevertheless, it is not enough for Charles to demonstrate that she had the skills to perform the job. Indeed, CSSD does not argue that Charles could not have performed the work in New Haven. Rather, Charles must show that CSSD's reason for choosing Anderson instead of her were pretextual, which in the context of this case means that she must show that her qualifications were at least equal to Anderson's. Charles has not done this.

Moreover, upon reviewing the parties' submissions, the court finds that there is a lack of evidence demonstrating racial discrimination. Charles must not only show that she was somehow discriminated against, but also that such discrimination occurred because of her race. *See Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998) (holding that Title VII is directed only at discrimination based upon the categories protected by Title VII). There is no evidence that CSSD's transfer decision was in any way motivated by race. The fact that Charles (who is African–American) did not receive the transfer, and Anderson (who is Caucasian) did, "is insufficient, by itself and without any evidence of racial animus, to demonstrate a Title VII violation." *Farrar v. Town Of Stratford*, 537 F.Supp.2d 332, 346 (D.Conn. 2008). "To hold otherwise would allow any person who is a member of a protected class under Title VII to prevail on a Title VII claim simply because he or she did not get [something] desired. . . ." *Id.*

Absent any indication of wrongful discrimination, it is not the role of the court to evaluate CSSD's business decisions. As the Third Circuit has aptly noted, "[t]o discredit the employer's proffered reason, the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether a discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent or competent." *Brewer v. Quaker State Oil Ref. Corp.*, 72 F.3d 326, 331 (3d Cir.1995) (internal quotation marks omitted); *see Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1330 (10th Cir.1999) ("Our role is to prevent unlawful hiring practices, not to act as a 'super personnel department' that second guesses employers' business judgments."). Charles has not presented any facts from which a reasonable finder of fact could imply pretext masking unlawful discrimination in the selection of Anderson over Charles. *See Scaria v. Rubin*, 117 F.3d 652, 655 (2d Cir.1997).

In sum, Charles has failed to establish a *prima facie* case of discrimination under Title VII. In addition, even if she had established a *prima facie* case, she has failed to demonstrated that CSSD's proffered reason was in fact pretext for wrongful discrimination. Therefore, Charles' Title VII discrimination claim fails as a matter of law. Consequently, with regard to Charles' Title VII discrimination claim, CSSD's motion for summary judgment (**dkt. # 29**) is **GRANTED.**

### C. TITLE VII HOSTILE WORK ENVIRONMENT

■ The complaint alleges that Charles experienced a hostile working environment as a result of the denial of her transfer request. CSSD has moved for summary judgment on this claim and presented arguments in its memorandum of law. Charles, however, does not in any way address this claim in her memorandum in opposition to the motion for summary judgment. "Federal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way." *Farrar*, 537 F.Supp.2d at 356 (internal quotation marks omitted). Therefore, the court shall deem as abandoned Charles' hostile work environment claim.

■ The court also points out that, even if Charles had addressed the hostile work environment claim in her opposition memorandum, there is a lack of evidence to support this claim. Title VII has been interpreted to prohibit conduct "requiring people to work in a discriminatorily hostile or abusive environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). "A hostile work environment claim requires a showing [1] that the harassment was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, and [2] that a specific basis exists for imputing the objectionable conduct to the employer." *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir.2002) (internal quotation marks omitted); *see Harris*, 510 U.S. at 21, 114 S.Ct. 367.

■ "The plaintiff must show that the workplace was so severely permeated with discriminatory intimidation, ridicule, and insult that the terms and conditions of her employment were thereby altered,"

*Alfano*, 294 F.3d at 373, and that such harassment occurred because of her race, *see Oncale*, 523 U.S. at 80, 118 S.Ct. 998. "This test has objective and subjective elements: the misconduct shown must be severe or pervasive enough to create an objectively hostile or abusive work environment, and the victim must also subjectively perceive that environment to be abusive." *Alfano*, 294 F.3d at 374 (internal quotation marks omitted). "As a general rule, incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive.... Isolated acts, unless very serious, do not meet the threshold of severity or pervasiveness." *Id.* (internal quotation marks and citations omitted). Nevertheless, "it is well settled in this Circuit that even a single act can meet the threshold if, by itself, it can and does work a transformation of the plaintiff's workplace." *Id.* "In short, a plaintiff alleging a hostile work environment must demonstrate either that a single incident was extraordinarily severe, or that a series of incidents were sufficiently continuous and concerted to have altered the conditions of her working environment." *Id.* (internal quotation marks omitted).

■ Here, Charles has presented nothing to demonstrate that her workplace was "severely permeated" with discriminatory intimidation, ridicule, and insult, or that the terms and conditions of her employment were altered in any way. Charles does not claim that CSSD (or its agents) intimidated, ridiculed, or insulted her; the denial of a transfer request is wholly inadequate to support this claim. Furthermore, as discussed above, there is a lack of evidence to show that CSSD's action (or inaction, as the case may be) was motivated by Charles' race. In sum, Charles' hostile work environment claim is abandoned, and even if it were not abandoned,

it would fail as a matter of law. Consequently, with regard to Charles' hostile work environment claim, CSSD's motion for summary judgment (**dkt. # 29**) is **GRANTED.**

### III. CONCLUSION

For foregoing reasons, CSSD's motion for summary judgment (**dkt. # 29**) is **GRANTED. Judgment in favor of the defendant, State of Connecticut Judicial Branch, Court Support Services Division, shall enter on all the remaining claims in the complaint. The clerk shall close this file.**