Maria **VALLERIANI**, Plaintiff,

v.

**ROUTE 390 NISSAN LLC, d/b/a Ideal Nissan/Irondequoit Suzuki, Defendant.**

**No. 11–CV–6494 EAW.**

United States District Court, W.D. New York.

Signed Sept. 2, 2014.

Ryan Charles Woodworth, The Woodworth Law Firm, Rochester, NY, for Plaintiff.

Jared P. Hirt, Evans & Fox, LLP, Rochester, NY, for Defendant.

## DECISION AND ORDER

ELIZABETH A. WOLFORD, District Judge.

## INTRODUCTION

Plaintiff Maria Valleriani ("Plaintiff") brings this employment discrimination action against Defendant Route 390 Nissan LLC, d/b/a Ideal Nissan/Irondequoit Suzuki ("Defendant") pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"), and the New York State Human Rights Law, Executive Law §§ 290 *et seq.* ("NYSHRL"). (Dkt. 1). Plaintiff alleges Defendant created a sexually hostile work environment and that she was unlawfully retaliated

against through a constructive discharge of employment. (*Id.*). Presently before the Court is Defendant's Motion for Summary Judgment pursuant to Fed.R.Civ.P. 56. (Dkt. 16). For the reasons set forth below, Defendant's motion is granted as to Plaintiff's retaliation claims, but denied with respect to Plaintiff's hostile work environment claims.

## FACTUAL BACKGROUND

Plaintiff began working for Defendant on September 4, 2007. (Dkt. 17 at ¶ 2; Dkt. 18 at ¶ 2; Dkt. 24–2 at ¶ 1). Plaintiff voluntarily resigned on March 14, 2008, but returned on December 3, 2008. (Dkt. 17 at ¶ 2; Dkt. 24–2 at ¶ 2). Ultimately, Plaintiff resigned from her position as Finance Manager on September 30, 2010. (Dkt. 17 at ¶ 2).

Angelo Ingrassia was the owner of Defendant (Dkt. 24–2 at ¶ 3), Alan Antinarelli was the General Sales Manager (*id.* at ¶ 4), Steve Burnette was a contracted Sales Manager and one of Plaintiff's supervisors (*id.* at ¶ 5), and Mike Henry was an employee (*id.* at ¶ 6).

Plaintiff claims she was subjected to a hostile environment based on her gender by co-workers, supervisors, and third parties. (*Id.* at ¶ 11). According to Plaintiff, this environment was "pervasive, severe, unwelcome and went unremedied by Defendant, despite the fact that they were aware that such misconduct was occurring, and despite the fact that some of the harassment was perpetrated by the owners of the company." (*Id.*).

Plaintiff contends that General Sales Manager Antinarelli had a "penchant for engaging in sexual innuendo and comments evincing hostility towards women in the workplace," and made offensive comments to Plaintiff and to other women in Plaintiff's presence. (Dkt. 1 at ¶ 16; Dkt. 24–2 at ¶ 17). Examples of these com-

ments include "stop being a cunt," "go take your pills you menopausal bitch," "stop being a bitch," "you smell like a French whore," "you look like shit today," and "your hair looks witchy." (Dkt. 1 at ¶ 16; Dkt. 24 at 6; Dkt. 24–2 at ¶ 17; Dkt. 24–4 at 13, 16–17, 34, 40). Plaintiff claims that Antinarelli stated on at least one occasion that "women shouldn't be in the car business—they are too fucking emotional—they can't handle it." (Dkt. 1 at ¶ 14; Dkt. 24 at 6; Dkt. 24–2 at ¶ 12; Dkt. 24–4 at 15). Antinarelli also allegedly stated on at least one occasion that he "doesn't like to hire women—can't work with them—they get on [his] nerves." (Dkt. 1 at ¶ 15; Dkt. 24 at 6; Dkt. 24–2 at ¶ 13; Dkt. 24–4 at 14, 33; Dkt. 24–4 at 33).

Jody Bunce, former Appointment Coordinator for Defendant and Plaintiff's domestic partner (Dkt. 24–2 at ¶ 7), testified that Antinarelli frequently referred to women as bitches, even his own wife. (Dkt. 24–4 at 73). According to Bunce, when women became emotional at work, Antinarelli would comment that women were too emotional or "couldn't handle" working in the car business. (*Id.* at 74–75). Bunce testified that she heard Plaintiff make complaints about co-workers to Antinarelli, and that Antinarelli would dismiss her complaints, responding with statements such as "[g]o take a pill, you menopausal bitch," or that "she must be on the rag." (*Id.* at 63, 76).

Bob Gritsay, former Sales Associate for Defendant, signed an affidavit indicating that he witnessed Plaintiff and other female workers for Defendant called "bitches," "cunts," "witches," "shit," and "whores" by Antinarelli and other co-work-

ers. (Dkt. 24–5 at 10). According to Gritsay, Defendant's work environment was "akin to a sports bar atmosphere." (*Id.*).

Plaintiff claims that one of her other supervisors, Steve Burnette, also made inappropriate comments to her, such as "let's go get drunk," "blow me," "you fucking bitch," "you dirty wench," and "you fucking baby, you're such a girl." (Dkt. 1 at ¶ 18; Dkt. 24–2 at ¶ 22).

Plaintiff also alleges that Mike Henry, a co-worker, "routinely" called Plaintiff a "turn coat bitch" and told Plaintiff to "go fuck yourself bitch" when Plaintiff refused to participate in what she perceived to be bank fraud. (Dkt. 1 at ¶ 21; Dkt. 24 at 8; Dkt. 24–2 at ¶¶ 24–25).

Plaintiff makes numerous allegations about Henry's inappropriate conduct, including an interaction on September 22, 2009, when Henry allegedly called Plaintiff a "fucking bitch" in front of Antinarelli. (Dkt. 1 at ¶ 25).[1] Plaintiff claims that she complained to Antinarelli and asked him to make Henry's conduct stop, and that Antinarelli told her to "shut up." (*Id.* at ¶ 27).

Plaintiff alleges that she informed Defendant's owner, Angelo Ingrassia, that she was afraid of Henry and "could not work like this," and that Ingrassia called Plaintiff at home that night, telling Plaintiff that she was "all wrong." (*Id.* at ¶¶ 28, 30). That same night, Plaintiff claims she sent an email to Ingrassia and Antinarelli complaining about Henry's behavior. (*Id.* at ¶ 31). The next day, Plaintiff alleges that Ingrassia told Plaintiff "if you can't get along with Henry then we will fire him," and that Ingrassia would "black ball

---

1. Plaintiff alleges this altercation with Henry occurred on September 22, 2009, in her complaint, but claims that the altercation occurred on September 22, 2010, in her affidavit. (Dkt. 1 at ¶ 25; Dkt. 24–2 at ¶ 29). Plaintiff states in both her complaint and her

affidavit that she emailed Ingrassia on the evening of the altercation. (Dkt. 1 at ¶ 31; Dkt. 24–2 at ¶ 30). That email is included in the record, and is dated September 22, 2009. (Dkt. 17–2). Therefore, it appears that the altercation with Henry occurred in 2009.

him all over the fucking car business." (*Id.* at ¶ 32).

Defendant acknowledges that Plaintiff did make complaints of inappropriate conduct by Henry to Ingrassia in the Fall of 2009. (Dkt. 16–2 at ¶ 39; Dkt. 17 at ¶¶ 6–7). According to Ingrassia, he investigated Plaintiff's complaint and determined that, although Henry's conduct was not sexual harassment, it was inappropriate and "required attention." (Dkt. 17 at ¶¶ 6–7). Ingrassia terminated Henry on October 15, 2009. (*Id.* at ¶ 7).

Defendant claims that Plaintiff did not avail herself of Defendant's harassment investigation policy to make complaints of sexual harassment or discrimination, and therefore cannot maintain an action for a hostile work environment. (Dkt. 16–2 at ¶ 32). The Employee Handbook, as issued to Plaintiff, incorporates a section outlining Defendant's policy for "Responding to Discrimination or Harassment." (*Id.* at ¶¶ 33–34). The policy directs an employee to inform Ingrassia or any department head of any complaints of sexual harassment or discrimination. (Dkt. 17–3). According to Defendant, Plaintiff made complaints to Ingrassia about alleged bank fraud, but she never made any complaints concerning allegations of sexual harassment or discrimination (other than arguably the complaint about Henry, which Defendant contends was promptly addressed). (Dkt. 16–2 at ¶ 35; *see* Dkt. 1 at ¶¶ 22 (Plaintiff acknowledges that Ingrassia terminated Henry's employment)). Antinarelli maintains that he has never sexually harassed or discriminated against Plaintiff, nor has he witnessed another employee of Defendant sexually harass or discriminate against Plaintiff. (Dkt. 17 at ¶¶ 9–10).

Plaintiff claims that she did avail herself of the company discrimination policy by complaining to Ingrassia about a hostile work environment on "more than ten occasions." (Dkt. 24 at 11; Dkt. 24–4 at 29). Further, Plaintiff alleges that after making a complaint to Ingrassia about Antinarelli calling her a "cunt" and a "bitch," Ingrassia responded "well, you are a bitch, I mean really, you're a nut case." (Dkt. 24 at 12; Dkt. 24–2 at ¶ 21).

Plaintiff claims that she told Antinarelli that she was being "discriminated against because she is a woman" and that if she were a man, Antinarelli would not be treating her the same way. (Dkt. 24–2 at ¶¶ 14–15). Plaintiff also alleges that when she complained to Burnette about Antinarelli's comments, Burnette told Plaintiff to "suck it up Nancy." (*Id.* at ¶ 20). As a result, Plaintiff asserts that she was "constructively discharged because Defendant failed to take prompt, remedial action" with regard to her complaints. (Dkt. 24 at 18; Dkt. 24–2 at ¶ 34).

Defendant contends that Plaintiff resigned from her position voluntarily and there was no constructive termination. (Dkt. 17 at ¶¶ 16–17; Dkt. 18 at ¶ 11).

### *PROCEDURAL BACKGROUND*

Plaintiff commenced this lawsuit on October 7, 2011. (Dkt. 1). Plaintiff alleges four separate causes of action in her complaint: (1) a sexually hostile work environment in violation of Title VII; (2) a sexually hostile Work environment in violation of the NYSHRL; (3) retaliation through a constructive discharge of employment in violation of Title VII; and (4) retaliation through a constructive discharge of employment in violation of NYSHRL.

After the deadline for completion of fact discovery (Dkt. 14), Defendant filed a motion for summary judgment on May 31, 2013 (Dkt. 16). Plaintiff filed papers in opposition to the summary judgment motion on August 5, 2013 (Dkt. 24), and De-

fendant filed reply papers on August 16, 2013 (Dkt. 25). The case was transferred to the undersigned on February 21, 2014 (Dkt. 28), and oral argument on the summary judgment motion was held on April 17, 2014, with the Court reserving decision (Dkt. 30).

## DISCUSSION

### I. Standard of Review

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted if the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The Court should grant summary judgment if, after considering the evidence in the light most favorable to the nonmoving party, the court finds that no rational jury could find in favor of that party. *Scott v. Harris,* 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). Once the moving party has met its burden, the opposing party " 'must do more than simply show that there is some metaphysical doubt as to the material facts.... [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial.*' " *Caldarola v. Calabrese,* 298 F.3d 156, 160 (2d Cir.2002) (quoting *Matsushita Elec.,* 475 U.S. at 586–87, 106 S.Ct. 1348) (emphasis in original). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment...." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (emphasis in original).

"Summary judgment applies no less to Title VII cases than to commercial cases or other areas of litigation, and plaintiff must still offer 'concrete evidence from which a reasonable juror could return a verdict in [her] favor.' " *Distasio v. Perkin Elmer Corp.,* 157 F.3d 55, 61 (2d Cir. 1998) (quoting *Anderson,* 477 U.S. at 242, 106 S.Ct. 2505) (internal citations omitted).

■ "Hostile work environment and retaliation claims under the NYSHRL are generally governed by the same standards as federal claims under Title VII." *Schiano v. Quality Payroll Sys., Inc.,* 445 F.3d 597, 609 (2d Cir.2006). Consequently, unless otherwise noted, references to Title VII below are also intended to refer to Plaintiff's claims under the NYSHRL.

### II. Hostile Work Environment

There are genuine issues of material fact concerning Plaintiff's claims that she was subjected to a sexually hostile work environment. As a result, Defendant's motion for summary judgment on the hostile work environment claims asserted in the first and second causes of action is denied.

In order to demonstrate a hostile work environment, a plaintiff must establish: "(1) that the harassment was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, and (2) that a specific basis exists for imputing the objectionable conduct to the employer." *Alfano v. Costello,* 294 F.3d 365, 373 (2d Cir.2002) (internal quotation omitted). "The plaintiff must demonstrate both that she 'subjectively perceive[d] the environment to be abusive' and that the conduct alleged objectively created 'an environment that a reasonable person would find hostile or abusive.' " *Garone v. United Parcel Serv., Inc.,* 436 F.Supp.2d 448, 463 (E.D.N.Y.2006) (quoting *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)). Courts must as-

sess whether a work environment rises to the necessary level of hostility and abusiveness by looking at the totality of the circumstances on a case-by-case basis, considering factors such as "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris,* 510 U.S. at 23, 114 S.Ct. 367. "Finally, it is 'axiomatic' that in order to establish a sex-based hostile work environment under Title VII, a plaintiff must demonstrate that the conduct occurred because of her sex." *Alfano,* 294 F.3d at 374 (quoting *Brown v. Henderson,* 257 F.3d 246, 252 (2d Cir.2001)).

Defendant contends that summary judgment is mandated in its favor on Plaintiff's hostile work environment claims because: (1) the alleged harassment was not directed at Plaintiff because of her gender, but rather according to Plaintiff's testimony because she complained about bank fraud; (2) the alleged conduct was not sufficiently severe or pervasive so as to constitute a hostile work environment; and (3) Plaintiff failed to take appropriate steps to complain about the alleged harassment. Each of Defendant's arguments is addressed below.

## A. *Harassment Based on Gender*

██ Defendant places great emphasis on Plaintiffs admission that the alleged harassment did not begin until after she voiced her concerns about bank fraud being committed by Defendant's employees, and Plaintiff's testimony that her complaints about bank fraud were the reason for the alleged harassment. (*See* Dkt. 24–4 at 42 ("that [complaints about bank fraud] is the reason why they treated me like they did, because I would not commit bank fraud … before the bank fraud I

wasn't treated poorly. I started—got treated poorly and verbally abusively and just completely like I was a piece of crap because I would not commit bank fraud.")). According to Defendant, because of Plaintiff's own admission as to the impetus for the alleged harassment, the conduct directed at Plaintiff, while sexually offensive on its face, could not have been based on Plaintiff's gender.

Of course, to constitute gender discrimination in the form of a hostile work environment, the conduct directed at Plaintiff had to be based on her gender. Here, the incidents about which Plaintiff complains were not facially neutral. The incidents involved sexually offensive language. For example, Plaintiff testified at her deposition that her supervisor, Antinarelli, uttered comments such as "go take your pills you menopausal bitch" and referred to Plaintiff as a "bitch" and "cunt". (Dkt. 24–4 at 13, 16–17). Plaintiff further testified that Antinarelli told her he does not "like to have women in the car business. Women can't be in the car business because they get on my nerves." (Dkt. 24–4 at 14). Plaintiff testified another supervisor, Burnette, made comments such as "blow me" and referred to Plaintiff as a "bitch". (*Id.* at 17). Further, a co-worker, Mike Henry, who was ultimately terminated by Defendant, screamed at Plaintiff calling her "fucking cunt" and "bitch." (*Id.* at 13).

Further, Plaintiff's former co-workers Bunce and Gritsay contend that Antinarelli frequently directed disparaging comments toward women at Defendant's workplace, and created a "sports bar" atmosphere. (Dkt. 24–4 at 73–75; Dkt. 24–5 at ¶ 11); *see also Lehman v. Bergmann Assocs., Inc.,* 11 F.Supp.3d 408, 418–19, No. 13–CV–482S, 2014 WL 1315385, at *7 (W.D.N.Y. Mar. 31, 2014) (considering employer statements that a co-worker was a "marketing bitch" and would not advance

in the firm "because she was a woman" as statements tending to show that employer "harbored a bias against women in the workplace," despite the fact that the comments were not directed to the plaintiff specifically).

The Court cannot conclude based on this record that Plaintiff should suffer an otherwise hostile work environment simply because the initial motivation for delivering sexual expletives and conduct was for reasons other than gender. For example, although Defendant may argue that Antinarelli made the statement that "women shouldn't be in the car business—they are too fucking emotional—they can't handle it" (Dkt. 24–2 at ¶ 12) in response to Plaintiff's expressed concerns about bank fraud, it is all too clear to the Court that Antinarelli's comments are gender-specific, and specifically target Plaintiff as a female. As Plaintiff testified, while the initial motivation for the conduct may have been her complaints about bank fraud, the conduct was directed at her in the nature of gender-based hostility because she was a woman. (Dkt. 24–4 at 14–15).

■ It is true that "[t]he mere fact that the 'words used have sexual content or connotations' does not automatically constitute discrimination based upon sex." *Farren v. Shaw Environmental, Inc.*, 852 F.Supp.2d 352, 358 (W.D.N.Y.2012) (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998)). Determination of sexual harassment "requires careful consideration of the social context in which particular behavior occurs and is experienced by its target." *Oncale*, 523 U.S. at 81, 118 S.Ct. 998. Ultimately, a jury will need to resolve the issue of whether the conduct was directed at Plaintiff because of her status as a woman.

**B. Severe or Pervasive Conduct**

■ Defendant argues that the alleged sexual harassment did not objectively or subjectively rise to the level of a hostile work environment. Again, this is an issue that the fact finder will need to resolve.

■ "Title VII aims to eradicate discrimination on the basis of sex, not enact a 'general civility code on the American workplace.'" *Garone*, 436 F.Supp.2d at 464 (quoting *Oncale*, 523 U.S. at 79, 118 S.Ct. 998). "Simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998) (internal quotation omitted). "As a general rule, incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." *Alfano*, 294 F.3d at 374 (internal quotation omitted). However, "[t]he fact that the law requires harassment to be severe or pervasive before it can be actionable does not mean that employers are free from liability in all but the most egregious of cases." *Torres v. Pisano*, 116 F.3d 625, 632 (2d Cir.1997).

Here, there are disputed issues of fact concerning a hostile work environment. Although Plaintiff's deposition testimony is admittedly unclear with respect to specific dates involving the alleged harassment, viewing the testimony and evidence in the light most favorable to Plaintiff, she has plainly testified that the comments permeated the workplace and were made "all of the time." (*See, e.g.*, Dkt. 24–4 at 18). Examples of these comments include "fucking cunt," "go take your pills you menopausal bitch," and "bitch." (Dkt. 24–4 at 13). Considering the totality of the circumstances, if Plaintiff's allegations are taken as true, a rational juror could find

that Plaintiff's workplace was permeated with discriminatory intimidation and insult to sustain a finding of a hostile work environment.

### C. *Imputing Knowledge to Defendant*

Once a plaintiff has established the existence of a hostile workplace, she must then demonstrate that the harassing conduct which created the hostile situation should be imputed to the employer. *Alfano*, 294 F.3d at 373. "The standards for assessing vicarious liability differ depending on the status of the alleged harasser." *Brown v. City of New York*, No. 11 Civ. 2915(PAE), 2013 WL 3789091, at *12 (S.D.N.Y. July 19, 2013). When the alleged harasser "is in a supervisory position over the plaintiff, the objectionable conduct is automatically imputed to the employer," although an employer who has not taken a tangible employment action against the employee may be permitted to raise the *Faragher/Ellerth* affirmative defense. *Gorzynski v. JetBlue Airways*, 596 F.3d 93, 103 (2d Cir.2010). "This defense consists of two elements: that (1) 'the employer exercised reasonable care to prevent and correct promptly any [discriminatory] harassing behavior,' and (2) 'the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.'" *Id.* (quoting *Faragher*, 524 U.S. at 807, 118 S.Ct. 2275; *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998)). By contrast, if the alleged harasser is a co-worker, the burden remains with the plaintiff and an employer will be liable "if the plaintiff demonstrates that 'the employer either provided no reasonable avenue for complaint or knew of the harassment but did nothing about it.'" *Brown*, 2013 WL 3789091, at *12 (quoting *Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98, 107 (2d Cir.2011)).

Here, Plaintiff alleges sexual harassment on the part of both supervisors and co-workers. (Dkt. 24 at 5–8). She further alleges that she complained on numerous occasions about the conduct, but Defendant failed to take any corrective action. (*Id.* at 13). Defendant counters Plaintiff's argument with proof of its anti-harassment policy, and its reliance on Plaintiff's written complaints which it claims failed to mention any type of sexual harassment. (Dkt. 16–2 at ¶¶ 32–34; Dkt. 17–3). In other words, Defendant essentially argues that Plaintiff's complaints of sexual harassment are after-the-fact claims that were never raised while she was employed by Defendant.

Defendant is correct that a fair reading of Plaintiff's email communications during her employment, her written communications to Defendant at the time of her resignation, and the written communication from an attorney retained on Plaintiff's behalf (Dkt. 17–1, 17–2, 17–5, 17–6, 17–7), do not include any express reference to sexual harassment. However, Plaintiff's sworn testimony indicates that she did make verbal complaints to supervisors and Defendant's owner about the alleged discriminatory conduct, and on multiple occasions. (Dkt. 24 at 11–12; Dkt. 24–2 at ¶ 21; Dkt. 24–4 at 29). As a result, these issues are not ripe for resolution as a matter of law. A jury must evaluate the evidence and determine whether the alleged harassment can be imputed to Defendant under the circumstances.

### III. *Retaliation*

Title VII provides that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because [the employee] has opposed any practice made an unlawful

employment practice by [Title VII]." 42 U.S.C. § 2000e–3(a). Plaintiff claims that she was constructively terminated in retaliation for her complaints of sexual harassment. (Dkt. 24 at 18; Dkt. 24–2 at ¶ 34).

Claims of retaliation for engaging in protected conduct under Title VII are examined under the *McDonnell Douglas* burden shifting test. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). "Under the *McDonnell Douglas* analysis, the plaintiff must establish a *prima facie* case of retaliation, which the defendant must rebut with a legitimate reason for the action. Then the plaintiff carries the ultimate burden of showing that the proffered explanation is really a pretext for retaliation." *Hannah v. One Communs.*, No. 08–cv–6567L, 2011 WL 5282633, at *9 (W.D.N.Y. Sept. 28, 2011).[2]

■ In order to plead a *prima facie* case for retaliation under Title VII, Plaintiff must establish that: (1) she was engaged in a protected activity; (2) Defendant was aware of this activity; (3) Defendant took adverse action against her; and (4) there was a causal connection between the protected activity and the adverse action. *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 177 (2d Cir. 2006). Defendant argues that Plaintiff has not established a *prima facie* case for retaliation. (Dkt. 19 at 8). Plaintiff argues that all four elements are satisfied. (Dkt. 24 at 15–20). Neither party goes beyond the *prima facie* case analysis in their papers submitted to the Court.[3]

"The burden at the summary judgment stage for Plaintiff is minimal and *de minimis*, and the court's role in evaluating a summary judgment request is to determine only whether proffered admissible evidence would be sufficient to permit a rational finder of fact to infer a retaliatory motive." *Dall*, 966 F.Supp.2d at 192 (internal quotation omitted). Despite the minimal burden, no rational jury could conclude that Plaintiff established a *prima facie* case of retaliation because there are no disputed issues of material fact concerning the causation element of Plaintiff's *prima facie* case.

### A. *Protected Activity*

■ "A plaintiff engages in 'protected activity' when she (1) opposes em-

2. "The standards for evaluating ... retaliation claims are identical under Title VII and the NYSHRL." *Kelly v. Howard I. Shapiro & Assocs.*, 716 F.3d 10, 14 (2d Cir.2013).

3. The Supreme Court held in *Univ. of Texas Sw. Med. Ctr. v. Nassar*, — U.S. —, 133 S.Ct. 2517, 186 L.Ed.2d 503 (2013), that a plaintiff pursuing a retaliation claim under Title VII must prove that "the desire to retaliate was the but-for-cause of the challenged employment action." 133 S.Ct. at 2525. Here, Plaintiffs own admissions that Antinarelli screamed at her, forcing her to quit, because she would not commit bank fraud (Dkt. 16–5 at 20–21), negates any claim by Plaintiff that Defendant's desire to retaliate against her for complaining about sexual harassment was the but-for-cause of her alleged constructive discharge. In other words, by Plaintiff's own admissions, Defendant was motivated by a desire to retaliate because Plaintiff would not commit bank fraud, not by a desire to retaliate because Plaintiff complained about sexual harassment. As a result, Plaintiff would not be able to meet the but-for standard under Title VII. Moreover, the standard would likely apply to Plaintiff's NYSHRL retaliation claims. *See Dall v. St. Catherine of Siena Med. Ctr.*, 966 F.Supp.2d 167, 191 n. 12 (E.D.N.Y.2013) ("This Court will continue to interpret the standard for retaliation under NYSHRL consistent with the Title VII jurisprudence, as clarified by the Supreme Court in *Nassar*"). However, the Court does not base its resolution of the summary judgment motion on this ground, as Defendant never raised it as a basis for its motion. Instead, Defendant focused exclusively on Plaintiff's inability to establish a *prima facie* case.

ployment practices prohibited under Title VII; (2) makes a charge of discrimination; or (3) participates in an investigation, proceeding or hearing arising under Title VII." *Bundschuh v. Inn on the Lake Hudson Hotels, LLC*, 914 F.Supp.2d 395, 405 (W.D.N.Y.2012).

 "[I]n order to constitute a protected activity for purposes of a retaliation claim, the complaint must be related to discrimination on a basis prohibited by Title VII." *Bennett v. Hofstra Univ.*, 842 F.Supp.2d 489, 500 (E.D.N.Y.2012). Informal protests of discrimination, such as "making complaints to management, writing critical letters to customers, protesting against discrimination by industry or society in general, and expressing support of co-workers who have filed formal charges" include recognized forms of protected activity. *Matima v. Celli*, 228 F.3d 68, 78–79 (2d Cir.2000) (quoting *Sumner v. U.S. Postal Serv.*, 899 F.2d 203, 209 (2d Cir. 1990)).

Plaintiff's sworn testimony is that she complained to Defendant's owner, Ingrassia, about a hostile work environment on "more than ten (10) occasions." (Dkt. 24 at 11; Dkt. 24–4 at 29). The record also establishes that Plaintiff complained on multiple occasions to Supervisors Antinarelli and Burnette. (Dkt. 24 at 12; Dkt. 24–2 at ¶¶ 20–21).

Defendant argues that there is no credible evidence that Plaintiff made a complaint to Defendant or any governmental agency that she was discriminated against. (Dkt. 17 at ¶ 9). As previously noted, Plaintiff's written communications to Ingrassia and Antinarelli do not mention sexual harassment or sexual discrimination. (Dkt. 17–5, 17–6). However, at the *prima facie* stage of a retaliation claim, a plaintiff may satisfy her *de minimis* burden of establishing a protected activity by alleging that she repeatedly told a supervisor

that she believed she was treated differently because she was a female, even if the supervisor "forcefully denies" the conversations. *Bundschuh*, 914 F.Supp.2d at 405.

Here, Plaintiff has met her *de minimis* burden to establish a protected activity. In her complaint and at her deposition, Plaintiff claimed to have told Ingrassia, Antinarelli, and Burnette that she believed she was being treated differently because she was female. A reasonable jury could conclude based on Plaintiff's testimony that Plaintiff was offended by her supervisors' behavior and complained to Ingrassia, Antinarelli, and Burnette on that basis.

### B. *Defendant's Knowledge*

 To satisfy the knowledge requirement, nothing more than "general corporate knowledge" that Plaintiff engaged in a protected activity is needed. *Kessler v. Westchester Cnty. Dep't of Soc. Servs.*, 461 F.3d 199, 210 (2d Cir.2006) (quoting *Gordon v. New York City Bd. of Edu.*, 232 F.3d 111, 116 (2d Cir.2000)).

Plaintiff asserts that her alleged complaints to Ingrassia, the owner of the company, as well as Antinarelli and Burnette, two supervisors, established "general corporate knowledge" of Plaintiffs complaints. (Dkt. 24 at 15–16). Again, Defendant disputes that Plaintiff complained to a supervisor about alleged sexual harassment or discrimination. (Dkt. 19 at 8–9). Although there is no explicit written documentation of Plaintiff's sexual discrimination complaints to supervisors, Plaintiff has sworn that she complained directly to her supervisors about discrimination, establishing an issue of fact concerning Defendant's knowledge under Plaintiff's *de minimis* burden.

## C. *Adverse Employment Action*

 "To make a *prima facie* showing of an adverse action, 'a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Bundschuh,* 914 F.Supp.2d at 405 (quoting *Kessler,* 461 F.3d at 207). Unlike a disparate treatment claim under Title VII, a retaliation claim "is not limited to discriminatory actions that affect the terms and conditions of employment." *Kessler,* 461 F.3d at 207 (quoting *Burlington N. & Santa Fe Railway Co. v. White,* 548 U.S. 53, 64, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006)). Instead, to pursue a retaliation claim under Title VII, " 'a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Id.* (quoting *White,* 548 U.S. at 68, 126 S.Ct. 2405). "[T]here are no bright-line rules with respect to what constitutes an adverse employment action for purposes of a retaliation claim, and therefore courts must pore over each case to determine whether the challenged employment action reaches the level of adverse." *Fincher v. Depository Trust and Clearing Corp.,* 604 F.3d 712, 721 (2d Cir.2010) (internal quotation omitted).

 The only adverse action specifically alleged by Plaintiff in her complaint is the alleged constructive discharge of her employment. (Dkt. 24 at 16). "Constructive discharge is considered an adverse employment action sufficient to support a retaliation claim." *Dall,* 966 F.Supp.2d at 194. "An employee is constructively discharged when his employer, rather than discharging him directly, intentionally creates a work atmosphere so intolerable that he is forced to quit involuntarily." *Terry v. Ashcroft,* 336 F.3d 128, 151–52 (2d Cir. 2003) (citing *Kirsch v. Fleet St., Ltd.,* 148 F.3d 149, 161 (2d Cir.1998)); *see also Petrosino v. Bell Atl.,* 385 F.3d 210, 229–30 (2d Cir.2004) (finding plaintiff failed to raise a question of fact on whether she was constructively discharged, even though she did establish sufficient grounds for claim of hostile work environment). Constructive discharge *"requires a 'further showing' beyond what is necessary to establish a hostile work environment or retaliation claim,* such that resignation qualified as a fitting response." *Bundschuh,* 914 F.Supp.2d at 408 (quoting *Pennsylvania State Police v. Suders,* 542 U.S. 129, 134, 124 S.Ct. 2342, 159 L.Ed.2d 204 (2004)) (emphasis added).

 "[W]orking conditions are intolerable when, viewed as a whole, they are 'so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign.'" *Terry,* 336 F.3d at 152 (quoting *Chertkova v. Connecticut Gen. Life Ins. Co.,* 92 F.3d 81, 89 (2d Cir.1996)). "An employee need not show that an employer acted with the specific intent to cause the employee to resign; rather, she need only show that the employer's actions were 'deliberate and not merely negligent or ineffective.'" *Bader v. Special Metals Corp.,* 985 F.Supp.2d 291, 310 (N.D.N.Y.2013) (quoting *Petrosino,* 385 F.3d at 229–30); *see also Farren,* 852 F.Supp.2d at 362 ("If a plaintiff cannot show specific intent on the part of the employer, he or she is required to at least demonstrate that an employer[']s actions were deliberate, not merely negligent or ineffective.").

"It is not enough that a reasonable person would have 'preferred not to continue working for that employer.'" *Lehman,* 11 F.Supp.3d at 415, 2014 WL 1315385, at *4

(quoting *Spence v. Maryland Cas. Co.*, 995 F.2d 1147, 1156 (2d Cir.1993)). Plaintiff must allege that "her job had become 'intolerable' to the point that she was 'forced into an involuntary resignation.'" *Id.* at 415, 2014 WL 1315385 at *4 (quoting *Pena v.` Brattleboro Retreat*, 702 F.2d 322, 325 (2d Cir.1983)). "'[A] perception that the employee is being unfairly criticized, or exposure to difficult or unpleasant conditions does not rise to the level of a constructive discharge.'" *Kurian v. Forest Hills Hospital*, 962 F.Supp.2d 460, 471 (E.D.N.Y.2013) (quoting *Russ v. Town of Watertown*, No. 3:04CV014AWT, 2005 WL 734344, at *2 (D.Conn. Mar. 29, 2005)).

Plaintiff testified at her deposition that she resigned on September 30, 2010, because Antinarelli was "screaming at [her] in front of the traveling sales team that was there and the rest of the employees that were there ... [b]ecause [she] wouldn't commit blatant bank fraud." (Dkt. 24-4 at 7). Plaintiff testified that Antinarelli's treatment on the date in question "was the straw—that was the icing on the cake." (*Id.* at 8). Plaintiff states in her sworn affidavit that she was "forced to resign on September 30, 2010 due to the verbal abuse I suffered from for the entire year I worked in the Finance Department." (Dkt. 24-2 at ¶ 32). According to Antinarelli, on the day that Plaintiff resigned, her repeated complaints had "slowed her work to almost a halt," and he instructed Plaintiff to "do her job or to leave." (Dkt. 17 at ¶ 8).

As discussed above, there is evidence in the record sufficient to support a finding that Plaintiff was subjected to a work environment that was verbally abusive. However, there has not been any evidence presented by Plaintiff to support that "further showing" beyond the necessary element of a hostile work environment claim, to justify Plaintiff's allegations of a constructive discharge. Indeed, according to Plaintiff's version of events, there was a steady barrage of abusive conduct over the entire year after she complained about bank fraud. It is impossible to distinguish between the abusive conduct that started in 2009, and the conduct that Plaintiff alleges ultimately resulted in her quitting her employment in September 2010.

Nonetheless, giving Plaintiff the benefit of the doubt on this summary judgment motion, particularly in view of the more lenient standards applicable to showing an adverse action for purposes of a retaliation claim, the Court will assume for purposes of the motion that Plaintiff has established this requisite element of a *prima facie* case.

**D. *Causal Connection***

 Proof of a causal connection between the protected activity and adverse action "can be shown either: (1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Gordon*, 232 F.3d at 117.

Here, the undisputed evidence negates any causal connection between Plaintiff's complaints of discrimination and the alleged constructive discharge. In opposition to the summary judgment motion, Plaintiff contends that Defendant's response to her complaints of discrimination by using vulgar and discriminatory language is evidence of retaliatory animus. (Dkt. 24 at 17). Plaintiff's arguments are misplaced. Defendant's response may constitute evidence of *discriminatory* animus, but there is nothing in the record to suggest that Defendant acted in the man-

ner claimed by Plaintiff because of Plaintiff's complaints of discrimination. In fact, according to Plaintiff's own testimony, the alleged abusive conduct occurred because she complained about bank fraud, not because she complained about discrimination. Plaintiff testified that the reason she left her employment with Defendant was because she was "trying to combat the bank fraud" and "because of the bank fraud, I was getting verbally abused." (Dkt. 24–4 at 14). During her deposition, Plaintiff repeatedly linked the verbal abuse, which she claims was the reason for her constructive discharge, to her complaints about bank fraud. (Dkt. 24–4 at 16, 18, 42).

Indeed, Plaintiff is unable to show that Defendant's conduct changed in any way from the time she made her complaints about bank fraud, to the time she complained about discrimination, to the time she was constructively discharged. Instead, Plaintiff complains that nothing changed. (Dkt. 24 at 18; Dkt. 24–2 at ¶ 34). According to Plaintiff, the verbal abuse started immediately after she complained about the bank fraud, and then it continued even after her alleged complaints of discrimination. (Dkt. 24 at 18). By definition, Plaintiff's testimony cuts against any causal relationship between the alleged harassment and complaints of discrimination. Moreover, while Plaintiff's testimony lacked specifics in terms of the dates of any alleged complaints of discrimination, a fair reading of her testimony suggests that she began complaining sometime in 2009, and yet she was not constructively discharged until September 2010. This similarly prevents a showing of any causal relationship.

Under the circumstances, no reasonable jury could conclude that Plaintiff's

constructive discharge in September 2010 occurred because of her complaints of discrimination starting back in 2009. *Cf. Cifra v. Gen. Elec. Co.*, 252 F.3d 205, 217 (2d Cir.2001) ("The causal connection needed for proof of a retaliation claim can be established indirectly by showing that the protected activity was closely followed in time by the adverse action.") (quotations and citations omitted).

## IV. *Motions for Sanctions*

Defendant moves for sanctions against Plaintiff and Plaintiff's counsel pursuant to Fed.R.Civ.P. 26(g)(3). (Dkt. 19 at 10). Plaintiff cross-moves for sanctions against Defendant pursuant to Fed.R.Civ.P. 16. (Dkt. 24 at 3–5). Because the parties have each failed to sufficiently demonstrate that sanctions are warranted in this case, both parties' motions for sanctions are denied. *See Metro. Opera Ass'n, Inc. v. Local 100, Hotel Emps. & Rest. Emps. Int'l Union*, No. 00 Civ. 3613(LAP), 2004 WL 1943099, at *8 (S.D.N.Y. Aug. 27, 2004) ("Sanctions under Rule 26(g) are imposed when a paper signed and filed has been interposed for an improper purpose or where a competent attorney could not have reasonably believed that the paper was well grounded in fact and warranted by existing law."); *Adams v. Dep't of Juvenile Justice of the City of New York*, No. 93 Civ. 8042(PKL), 1996 WL 82408, at *1 (S.D.N.Y. Feb. 26, 1996) ("Even if an argument is frivolous, the Court can exercise its discretion not to impose sanctions.") (citing *Knipe v. Skinner*, 19 F.3d 72, 78 (2d Cir.1994)).

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is denied as to Plaintiff's hostile work environment claims, and granted as to Plaintiff's retalia-

tion claims. The parties' motions for sanctions are denied.

SO ORDERED.