15-1948-cv
Richard Figueroa  v. Jeh Johnson

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 10th day of May, two thousand sixteen.

PRESENT:  PIERRE N. LEVAL,
             CHRISTOPHER F. DRONEY,
                    *Circuit Judges*,
             PAUL A. ENGELMAYER,[*]
                    *Judge*.

------------------------------------------------------------------------

RICHARD FIGUEROA,

                *Plaintiff-Appellant*,


             v.                                                 No. 15-1948-cv

JEH JOHNSON, SECRETARY, U.S. DEPARTMENT OF HOMELAND SECURITY

                *Defendant-Appellee*.

------------------------------------------------------------------------


FOR PLAINTIFF-APPELLANT:        ALAN E. WOLIN, Jericho, NY.

FOR DEFENDANT-APPELLEE:        SETH D. EICHENHOLTZ (Varuni Nelson, *on the brief*), *for* Robert L. Capers United States Attorney for the Eastern District of New York.

---

[*] Judge Paul A. Engelmayer, of the Southern District of New York, sitting by designation.

Appeal from a May 27, 2015 judgment of the United States District Court for the Eastern District of New York (Kuntz, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiff Richard Figueroa—an employee of the defendant—alleges claims of discrimination based on sex, gender, and national origin; retaliation; hostile work environment; and quid pro quo sexual harassment—all pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. These claims stem from various incidents which occurred between 2007 and 2011 in the course of Figueroa's employment as a Customs and Border Protection Officer at JFK International Airport in Jamaica, New York. Figueroa appeals the district court's grant of the defendant's motion for summary judgment on all claims. We assume the parties' familiarity with the underlying facts and procedural history of this case.

This Court reviews a district court's grant of summary judgment de novo. Chen v. City Univ. of New York, 805 F.3d 59, 69 (2d Cir. 2015). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether summary judgment is appropriate, we must resolve all ambiguities and draw all reasonable inferences against the moving party. Tolbert v. Smith, 790 F.3d 427, 434 (2d Cir. 2015). Moreover, this Circuit emphasizes the need for caution in granting summary judgment to an employer in discrimination cases that turn on the employer's intent. Holcomb v. Iona Coll., 521 F.3d 130, 137 (2d Cir. 2008). However,

2

"conclusory statements or mere allegations will not suffice to defeat a summary judgment motion." Fabrikant v. French, 691 F.3d 193, 205 (2d Cir. 2012) (quoting Davis v. New York, 316 F.3d 93, 100 (2d Cir. 2002)) (internal quotation marks omitted). This holds true even in the discrimination context. See Holcomb, 521 F.3d at 137 ("Even in the discrimination context, however, a plaintiff must provide more than conclusory allegations to resist a motion for summary judgment.").[1]

1.  Discrimination

Discrimination claims under Title VII are adjudicated under the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802–05 (1973). Where, as here, the employer has stated legitimate, nondiscriminatory reasons for taking an adverse employment action, the plaintiff must make an evidentiary showing sufficient to support a reasonable finding that the adverse action was caused at least in part by discriminatory intent. See Littlejohn v. City of New York, 795 F.3d 297, 307 (2d Cir. 2015).

First, Figueroa claims that he was discriminated against on the basis of gender and national origin when he was assigned to work on Thanksgiving and New Year's Day in late 2007. Figueroa testified at his deposition that two officers beneath him in seniority were not required to work on holidays. However, the defendant presented evidence, which Figueroa does not contest, showing that one of those officers worked Christmas Eve 2007 and New Year's Day 2008, while the other worked Thanksgiving 2007,

---

[1] The defendant argues that Figueroa's brief waived his claims by failing to adequately comply with Federal Rule of Appellate Procedure 28(a)(8)(A). We assume, without deciding, that Figueroa did not waive or forfeit his claims and thus analyze them on their merits. See Amnesty Am. v. Town of W. Hartford, 361 F.3d 113, 132 (2d Cir. 2004) ("Although we agree that plaintiffs' brief is seriously deficient . . . we decline to dismiss the appeal on this basis.").

3

Christmas Eve 2007, Christmas Day 2007, and New Year's Day 2008. Meanwhile, Figueroa ultimately only worked New Year's Day 2008. Figueroa, therefore, has not offered any evidence supporting an inference that he was treated worse than other officers—let alone that he was treated worse than other officers because of a protected characteristic, and thus that he was subjected to discriminatory treatment.

Second, Figueroa challenges as discriminatory the suspension he received following an incident with SCBPO Sachdeva on December 29, 2007. The district court granted summary judgment to the defendant because Figueroa failed to allege that the person who ultimately approved his suspension, Robert Meekins, was motivated to do so by Figueroa's gender or national origin. But Figueroa alleged that Sachdeva, who was his supervisor, was motivated by bias and that she initiated the disciplinary proceedings by complaining of Figueroa's behavior. If Sachdeva played a "meaningful role" in the decision-making process that led to Figueroa's suspension, the defendant can still be liable. See Holcomb, 521 F.3d at 143 ("[A] Title VII plaintiff is entitled to succeed, 'even absent evidence of illegitimate bias on the part of the ultimate decision maker, so long as the individual shown to have the impermissible bias played a meaningful role in the . . . process.'" (alteration in original) (quoting Bickerstaff v. Vassar Coll., 196 F.3d 435, 450 (2d Cir. 1999))). We have not previously addressed whether a complainant can be considered to have played a "meaningful role" in a disciplinary process, and Sachdeva's status as Figueroa's supervisor complicates that question further in this case. However, we need not decide this question here, because, even assuming Sachdeva played a "meaningful role" in Figueroa's suspension, no reasonable juror could conclude that the

4

defendant suspended Figueroa because of a protected characteristic. See M.O. v. N.Y.C. Dep't of Educ., 793 F.3d 236, 245 (2d Cir. 2015) ("[W]e are entitled to affirm the judgment on any basis that is supported by the record." (internal quotation marks omitted)). The defendant contends that it suspended Figueroa because he had a "heated private conversation" with Sachdeva. Although Figueroa asserts that he neither used profanity nor threatened Sachdeva, he does not deny the heated confrontational exchange and offers no evidence from which a jury could reasonably conclude that his suspension was attributable to discrimination.

Third, Figueroa argues that he was discriminated against when he was "required" to participate in the bid rotation placement process and failed to receive his bid requests. The defendant presented evidence that Figueroa was permitted to bid because his disciplinary action was put in abeyance. Figueroa provided nothing but his own conclusory statements that he should not have been able to bid. Figueroa has not disputed that his disciplinary action was in abeyance and has not pointed to any other employee who was not permitted to bid while having a disciplinary action in abeyance. Moreover, Figueroa has provided nothing but mere allegations that his bid results were not in accordance with his seniority, let alone that they were not in accordance with his seniority because of his gender or national origin. No reasonable jury could conclude that the bid results were discriminatory.

Fourth, Figueroa claims that his suspension following the July 25, 2011 incident was motivated by discrimination on the basis of his sex, gender, and national origin.

Figueroa provides no evidence of any discriminatory intent in this decision and, therefore, summary judgment was proper.

Fifth, the plaintiff challenges the two-week suspension he received as a result of his overtime assignment on November 25, 2011. Again, Figueroa provides no evidence of any discriminatory intent in the suspension decision, and therefore his claim fails.

### 2. Retaliation

The McDonnell Douglas burden-shifting framework applies in the retaliation context as well. Summa v. Hofstra Univ., 708 F.3d 115, 125 (2d Cir. 2013). Because the defendant has articulated nonretaliatory reasons for the alleged adverse employment actions, Figueroa must offer evidence from which a reasonable jury could conclude that the actions were motivated by discrimination. Id.

Figueroa argues that the January 2009 bid rotation assignment came in retaliation for his April 2008 email and complaint about SCBPO Sachdeva. He claims that his suspension for the July 2011 incident—which was imposed in November 2011—came in retaliation for his filing of this lawsuit in April 2011. And he argues that his February 2012 suspension for the November 2011 incident also arose in retaliation for the filing of this lawsuit.

For every claim, the defendant met its burden to provide a legitimate, nonretaliatory reason for the employment action. The defendant stated that the plaintiff was allowed to bid in January 2009 because his disciplinary action was in abeyance and asserted that his placement was made in accordance with seniority. The defendant claimed that Figueroa's November 2011 suspension was imposed because he had refused

6

SCBPO Cano's instructions to move to his assigned booth and to submit a leave slip before departing. And it stated that defendant's March 2012 suspension was in response to his November 25, 2011 refusal to drive on the airport tarmac and inability to process passports.

In response, the plaintiff provided no evidence of a retaliatory motive other than the observation that some of the adverse actions occurred within seven months of some of the protected activity. This time relationship, without more, is insufficient to permit a reasonable finding of retaliation. See El Sayed v. Hilton Hotels Corp., 627 F.3d 931, 933 (2d Cir. 2010) (per curiam) (holding that "temporal proximity is insufficient to satisfy appellant's burden to bring forward some evidence of pretext"). Therefore, Figueroa's retaliation claims fail.

3. Hostile Work Environment

To prove a hostile-work-environment claim, a plaintiff must show that the complained-of conduct (1) is objectively severe or pervasive in that it creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's protected characteristic. Patane v. Clark, 508 F.3d 106, 113 (2d Cir. 2007) (quoting Gregory v. Daly, 243 F.3d 687, 691–92 (2d Cir. 2001)). "The plaintiff must show that the workplace was so severely permeated with discriminatory intimidation, ridicule, and insult that the terms and conditions of her employment were thereby altered." Alfano v. Costello, 294 F.3d 365, 373 (2d Cir. 2002). In order to make this showing, the plaintiff "must demonstrate either that a single

7

incident was extraordinarily severe, or that a series of incidents were sufficiently continuous and concerted to have altered the conditions of her working environment." Id. at 374 (internal quotation marks omitted). To decide whether this threshold has been reached, courts examine case-specific circumstances in their totality—evaluating the severity, frequency, and degree of abuse. Id.

Figueroa has not offered evidence from which a reasonable jury could support a valid claim for hostile work environment. None of the incidents he alleges is the type of severe event that would, by itself, give rise to a hostile-work-environment claim. See, e.g., Howley v. Town of Stratford, 217 F.3d 141, 154 (2d Cir. 2000) (finding a valid hostile-work-environment claim based on a single incident in which the plaintiff's supervisor made a long, sexually explicit tirade against the plaintiff in front of a large group); Richardson v. New York State Dep't of Corr. Serv., 180 F.3d 426, 437 (2d Cir. 1999) (stating that a single incident of sexual assault creates an abusive work environment). We also agree with the district court that the plaintiff's allegations do not demonstrate a continuous or concerted series of incidents. Therefore, the plaintiff did not present sufficient evidence to support a hostile-work-environment claim.

4. Quid Pro Quo Sexual Harassment

In order to establish a prima facie case of quid pro quo sexual harassment, a plaintiff must present evidence (1) that he was subject to unwelcome sexual conduct, and (2) that his reaction to that conduct was then used as the basis for decisions affecting compensation, terms, conditions, or privileges of employment. Karibian v. Columbia Univ., 14 F.3d 773, 777 (2d Cir. 1994). "The relevant inquiry in a quid pro quo case is

whether the supervisor has linked tangible job benefits to the acceptance or rejection of sexual advances." Id. at 778.

Figueroa claims that he was a victim of quid pro quo sexual harassment after he rejected SCBPO Sachdeva's alleged sexual advances. Figueroa has presented no evidence that his reaction to SCBPO Sachdeva's alleged advances—even if those allegations are true—was used as a basis for any adverse decision. Rather, he seems to rely solely on temporal proximity to prove that the defendant took adverse action against him because he refused Sachdeva's supposed advances. He alleges that the encounters with Sachdeva occurred between September 2006 and November 2006. The first instance of adverse action towards Figueroa occurred in November 2007 when he was assigned to work Thanksgiving Day. During that one-year intervening time period, Sachdeva had multiple prior opportunities to assign Figueroa to work holidays. And, as discussed above, the defendant offered evidence of a non-quid-pro-quo reason for each of the adverse actions. Therefore, we agree with the district court that, in the circumstances of this case, a one-year gap is too long to demonstrate, without more, that the action was taken in response to Figueroa's reaction to SCBPO Sachdeva's alleged conduct.

We have considered Figueroa's remaining arguments and find them to be without merit.  Accordingly, we **AFFIRM** the judgment of the district court.


FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

9